STATE of Utah, Plaintiff and Appellee,

v.

Mark Joseph BAKER, Defendant and Appellant.

No. 911650–CA.

Court of Appeals of Utah.

July 30, 1998.

Robert K. Heineman, Salt Lake City, for Appellant.

Jan Graham and J. Frederic Voros, Salt Lake City, for Appellee.

Before WILKINS, Associate P.J., and BENCH and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

This is the second appearance of defendant Mark Joseph Baker before this court appealing his convictions for rape of a child, a first degree felony, in violation of Utah Code Ann. § 76–5–402.1 (1990), and sodomy on a child, a first degree felony, in violation of Utah Code Ann. § 76–5–403.1 (1990). Defendant claims numerous errors by the trial court, as well as ineffective assistance of counsel. We affirm.

## BACKGROUND [1]

Between July and October, 1987, defendant was married to C.P. The couple lived in Salt Lake County with C.P.'s three sons and

---

1. We recite the evidence and all reasonable inferences drawn therefrom in a manner most favorable to the jury verdict. *See State v. Dunn,* 850 P.2d 1201, 1205 (Utah 1993).

her daughter, H.H. H.H. was five or six years old at the time.

During that period, C.P. worked nights as a bartender and defendant watched her children while she was gone. Although the boys often slept outside in a backyard tent, defendant never allowed H.H. to sleep outside with them.

Numerous times while the boys were outside, defendant went into H.H.'s room, undressed himself, and told H.H. to put on her mother's nightgown. After then tying H.H.'s hands and feet and placing a bandanna in her mouth, defendant had vaginal or anal intercourse with her. At times, he also forced H.H. to perform oral sex.

Defendant was charged with rape and sodomy of a child, and a two day trial began on May 29, 1991. In his opening argument, defense counsel conceded that H.H. had been sexually abused. The only disputed issue was whether defendant was the perpetrator of that abuse. The State produced evidence that H.H. had identified the perpetrator as her stepfather, "Mark," who had curly hair and "fuzz" on his face, that H.H. never deviated from that identification, and that, in fact, defendant did have facial hair during the time he lived with C.P. and her family.[2] The State also produced evidence that defendant's sexual activities with C.P. included binding her in the same manner described by H.H. Finally, the State produced evidence that, in 1990, H.H. tested positive for chlamydia in both the vagina and the rectum. The jury returned guilty verdicts on both counts. The court sentenced defendant to two concurrent terms of five years to life, each with a minimum mandatory term of fifteen years.

Defendant filed an appeal on June 28, 1991. On November 2, 1994, this court reversed defendant's convictions, finding prejudicial error in the trial court's refusal to dismiss a juror for cause. See State v. Baker, 884 P.2d 1280, 1286 (Utah Ct.App.1994), cert. granted, 892 P.2d 13 (Utah 1995). On March 21, 1997, the supreme court reversed this court's decision, holding defendant had failed to preserve his juror claim by not using one of his peremptory challenges to remove the juror. See State v. Baker, 935 P.2d 503, 510 (Utah 1997). The supreme court then remanded the case to this court for consideration of defendant's remaining claims.[3]

ISSUES

Defendant raises several issues on appeal. First, he argues that the trial court improperly admitted expert testimony premised on the victim's credibility in violation of State v. Rimmasch, 775 P.2d 388 (Utah 1989). Second, defendant claims the trial court improperly allowed the State to invoke sympathy for H.H. in its closing argument. Third, defendant asserts that the State improperly elicited testimony commenting on defendant's invocation of his right to remain silent. Fourth, defendant claims he was denied effective assistance of counsel at trial. Fifth, defendant claims there was insufficient evidence to support his convictions. Finally, defendant argues the trial court abused its discretion in sentencing him to minimum mandatory terms of fifteen years on each count.

ANALYSIS

*Expert Testimony*

Defendant claims the trial court erred in allowing the State's primary expert to comment on H.H.'s credibility, in violation of State v. Rimmasch, 775 P.2d 388 (Utah 1989). Because defendant failed to raise this issue below, we review his claim for plain error. Under the plain error doctrine, defendant "must show . . .: (i) An error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for [defendant]." State v. Dunn, 850 P.2d 1201, 1208 (Utah 1993).

---

2. Although H.H. could not recall Mark's last name, evidence at trial indicated H.H. suffers from a learning disability that makes it easier for her to recall experiences than to recall factual information told to her by others.

3. The remand was pursuant to an order amending the supreme court's opinion.

The State's primary expert on child sexual abuse was Dr. Karen Hansen, a pediatrician at Primary Children's Medical Center, who examined H.H. on December 20, 1990. Hansen both interviewed H.H. and performed a physical examination of her. The examination produced "no findings that would have been corroborative of sexual abuse"; however, H.H. did test positive for chlamydia. After meeting with H.H., Hansen concluded that H.H. had been sexually abused. At trial, Hansen testified: "[T]he basis was the fact about the way [H.H.] told her story with explicit details, what, you know, she had to say. And then the [c]hlamydia cultures were very convincing about the sexual abuse."

In *Rimmasch,* our supreme court held that, absent foundation demonstrating the "inherent reliability" of the scientific basis for an expert's conclusion that a particular person was telling the truth on a particular occasion, an expert's opinion "based largely upon ... the expert['s] subjective appraisals of the [victim's] truthfulness during interviews" is not admissible. *Rimmasch,* 775 P.2d at 393, 406–07; *see also State v. Bates,* 784 P.2d 1126, 1129 (Utah 1989) (finding error in admitting expert's bolstering testimony where "State did not qualify her as an expert on discerning truth"); *State v. Ramsey,* 782 P.2d 480, 485 (Utah 1989) (same).

■ Under *Rimmasch,* the trial court's admission of Hansen's bolstering testimony was obvious error. However, Hansen's testimony went only to whether H.H. had in fact been sexually abused.[4] Defense counsel had already conceded that fact in opening argument. Thus, Hansen's testimony was essentially cumulative. Because of this, we do not believe that "absent the error, there is a reasonable likelihood of a more favorable outcome" for defendant. *Dunn,* 850 P.2d at 1208–09. We conclude, then, that the admission of the testimony was not plain error.

4. Hansen was never asked to identify H.H.'s abuser, and Hansen offered no opinion on that issue.

5. Plain error is determined under the legal standards applicable at the time of trial, *see Dunn,* 850 P.2d at 1228 (holding that counsel ineffectiveness "based on an oversight or misreading of law" must be based on "the law in effect at the time of trial"); *State v. Ellifritz,* 835 P.2d 170,

## Closing Argument

Defendant's second claim is that the trial court improperly allowed the State to invoke juror sympathy for H.H. in its closing argument. Because defendant did not object, we review the State's comments for plain error. *See State v. Dunn,* 850 P.2d 1201, 1208–09 (Utah 1993).

■ "Counsel is afforded considerable latitude in closing argument to the jury and may fully recount the evidence adduced and the reasonable inferences to be drawn therefrom." *State v. Hopkins,* 782 P.2d 475, 478 (Utah 1989). Furthermore, "[c]ourts generally recognize that, during closing arguments, a prosecutor may comment on the credibility of witnesses." *State v. Cummins,* 839 P.2d 848, 854 n. 15 (Utah Ct.App.1992) (citations omitted), *cert. denied,* 853 P.2d 897 (Utah 1993); *cf. State v. Tillman,* 750 P.2d 546, 554 (Utah 1987) (suggesting that bolstering witness is not improper in stating "it is clear that [the remarks] were intended to bolster [State witness's] credibility and were not intended to contrast her decision to testify with defendant's choice to remain silent.").[5]

The standard to be applied in determining whether improper argument merits reversal is twofold: (1) was the argument directed toward matters the jury would not be justified in considering, and (2) was the error substantial and prejudicial such that in its absence there is a reasonable likelihood of a more favorable result for the defendant?

*Hopkins,* 782 P.2d at 478; *see also Tillman,* 750 P.2d at 555. In applying that standard, " 'the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial.' " *Hopkins,*

174 (Utah Ct.App.1992) ("When defendant raises the issues of both plain error and ineffective assistance of counsel, 'a common standard is applicable.' " (quoting *State v. Verde,* 770 P.2d 116, 124 n. 15 (Utah 1989))). However, we cite to *Cummins,* a case decided after defendant's trial, because it appears consistent with the supreme court's opinion in *Tillman.*

782 P.2d at 480 (quoting *United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985)); *see also State v. Andreason*, 718 P.2d 400, 402–03 (Utah 1986) (holding that in determining prejudice from improper argument, "we consider the entire record and circumstances of the case.").

■ The State's closing argument in this case, including rebuttal, spans twenty-nine pages of trial transcript. Defendant takes issue with essentially six paragraphs.[6] A review of the State's argument as a whole indicates that it consisted primarily of a review of the evidence. That review focused not only on H.H.'s vulnerability at the time of the sexual abuse, but also on evidence corroborating H.H.'s story, as well as evidence explaining why H.H.'s testimony might at times have been inconsistent. All of this is proper closing argument. So too is the State's focusing on this evidence to support a conclusion that H.H. was telling the truth.

■ To the extent some of the State's comments exceeded the bounds of permissible argument, we do not believe they rose to the level of obvious error. Most of the comments challenged by defendant are in fact ambiguous as to whether they urge the jury to feel sympathy for the victim or merely urge the jury to believe the victim based on the evidence. This ambiguity, combined with the fact that there was no settled case law in this state directly addressing comments evoking victim sympathy, indicates the inappropriateness of applying the plain error doctrine to these comments. *See State v. Ross*, 951 P.2d 236, 239 (Utah Ct.App.1997) ("Utah courts have repeatedly held that a trial court's error is not plain where there is no settled appellate law to guide the trial court.").

Finally, the evidence against defendant in this case was considerable. *See Andreason*, 718 P.2d at 403 ("If proof of a defendant's guilt is strong, we will not presume the improper remark to be prejudicial."); *State v. Smith*, 700 P.2d 1106, 1112 (Utah 1985) (holding improper comment harmless when "record contains substantial evidence of defendant's guilt"). Thus, even if there was error, we do not believe the error was so "substantial and prejudicial such that in its absence there is a reasonable likelihood of a more favorable result" for defendant. *Hopkins*, 782 P.2d at 478.

### Right to Silence

Defendant also claims the trial court improperly allowed the State to elicit testimony concerning defendant's invocation of his right to remain silent. " '[W]e will not disturb the trial court's rulings regarding the admissibility of evidence unless it clearly appears that the lower court was in error.' " *State v. Braun*, 787 P.2d 1336, 1337 (Utah Ct.App.

6. In his brief, Defendant cites specifically to the following portions of the State's closing argument:

> [H.H.]'s only weapon that she had then and she has now is the truth. And if you don't believe her, you take away the only weapon that she has. And if you acquit Mr. Baker, then you send the message to [H.H.], Don't come in and tell us you were hurt because we are not going to believe you.
>
> . . .
>
> Our constitution proclaims justice for all. And that includes the little ones, even the children. And when a child's cry is hard to hear, we still have to try and listen. Children in our society deserve justice just like the rest of us, and that includes the right to be believed by eight adults.
>
> [H.H.] can't vote. We can't elect legislatures that are supposed to protect her. She can't even sit on a jury in child sexual abuse cases. But she still has the right to justice, and she still has the right to be believed.

> When you retire to the jury room, you have to decide what the truth is in this case. Please do not send a message to [H.H.] and all the other children, Don't come to us when you have been hurt because we won't believe you, we won't listen to what you have to say.
>
> I think when you retire to the jury room, you will know what's in your hearts. And you will know the truth about what happened, and that this man, this stepfather of [H.H.], raped her and sodomized her.

Defendant also cites to a portion of the State's rebuttal:

> And as I said earlier, I know that when you retire to the jury room and you look in your hearts for the truth, you will see the weapon that [H.H.] is trying to use so that it doesn't happen again or to anyone else, and that is the weapon of truth. Please send her the message that you believe her and let her come forward and tell you about what has happened to her. And please find this man guilty of what he did to her.

1990) (quoting *Belden v. Dalbo, Inc.,* 752 P.2d 1317, 1319 (Utah Ct.App.1988)).

The Due Process Clause of the Fourteenth Amendment prohibits use of a defendant's post-*Miranda* silence for impeachment purposes. *See State v. Harmon,* 956 P.2d 262, 267–68 (Utah 1998) (discussing *Doyle v. Ohio,* 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976), and *Greer v. Miller,* 483 U.S. 756, 763, 107 S.Ct. 3102, 3108, 97 L.Ed.2d 618 (1987)). However, "the mere mention that a defendant invoked his constitutional rights does not prima facie establish a due process violation." *Id.* at 268. Rather, for the reference to constitute such a violation, "the State must, in some way, use the defendant's silence to undermine the exercise of those rights guaranteed by the Fourteenth Amendment." *Id.*

In this case, nothing in the record indicates that the prosecutor used the reference to undermine defendant's constitutional right to remain silent. The comment came during Detective Cazier's testimony concerning his investigation;[7] it was isolated and no further reference was made to it during the course of defendant's trial. *See id.* at 269 (finding no *Doyle* violation where comment was "merely incidentally and inadvertently elicited" and "prosecutor did not make reference to or inquire further into [the defendant's] silence ..., nor ... attempt to use [the defendant's] silence to cast an inference of his guilt"); *State v. Singleton,* 693 P.2d 68, 69–70 (Utah 1984) (finding no error where officer's comment "was elicited solely to provide foundation" for relevant and admissible statement made shortly thereafter, "[n]o further reference or comment by the prosecutor was made at any point in the trial," and the questioning "does not suggest that it was

conducted in any effort to encourage any inference of guilt from appellant's silence."); *State v. Urias,* 609 P.2d 1326, 1328 (Utah 1980) (finding no violation where "prosecutor was having the officer testify to the circumstances of the arrest and ... the information elicited was but a part of the natural sequence of events," and comment was not used "to cast any inference of guilt of the defendant").

Furthermore, defendant testified at trial, "thereby offsetting or even dispelling any negative inference regarding [his] silence." *State v. Lairby,* 699 P.2d 1187, 1206 (Utah 1984) (finding comment harmless where "questioning was quite limited," there "was no comment on it in closing argument," and defendant "testified extensively in her own behalf"), *overruled on other grounds by State v. Ossana,* 739 P.2d 628 (Utah 1987). Accordingly, we hold that Detective Cazier's one reference to defendant's invocation of his right to remain silent does not constitute a *Doyle* violation.

### Ineffective Assistance

Defendant asserts that his counsel's repeated errors at trial denied him the effective assistance of counsel guaranteed under the Sixth Amendment to the United States Constitution. "When, as in this case, the claim of ineffective assistance of counsel is raised for the first time on appeal, we resolve the issue as a matter of law." *State v. Strain,* 885 P.2d 810, 814 (Utah Ct.App.1994) (footnote omitted).

To bring a successful ineffective assistance of counsel claim, "a defendant must show that trial counsel's performance was deficient in that it 'fell below an objective

---

7. During the State's examination of Detective Larry Cazier, the following dialogue took place:

Q. Did you ever attempt to speak with Mark Baker?
A. Yes, I did.
Q. Did you speak with him?
A. Just briefly.
Q. All right. Did you have any discussion with him about the case?
A. Our only conversation was—
DEFENSE: I'll object to this, your Honor. I have a feeling that he is going to discuss the exercise of Mr. Baker's constitutional rights.

STATE: I am just trying to establish if he ever talked with him or what he did as part of his investigation.
COURT: I would overrule the objection at this point.
Q. Did you have a conversation with Mr. Baker?
A. I asked him if he would speak to me and he declined to speak to me.
Q. Now, Detective Cazier, did you screen this case with the County Attorney's Office?

standard of reasonableness,' and that the deficient performance prejudiced the outcome of the trial." *State v. Garrett,* 849 P.2d 578, 579 (Utah Ct.App.1993) (quoting *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). In determining whether counsel's performance was deficient, "we must 'indulge in the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that under the circumstances, the challenged action "might be considered sound trial strategy." ' " *Id.* (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 (citation omitted)); *accord State v. Tennyson,* 850 P.2d 461, 465 (Utah Ct.App. 1993). To establish prejudice under *Strickland,* the defendant must show that, "but for the deficient representation, there is a 'reasonable probability' that the result would have been different." *State v. Hall,* 946 P.2d 712, 719 (Utah Ct.App.1997) (citation omitted), *cert. denied,* 953 P.2d 449 (Utah 1998). Prejudice will not be presumed, *see Parsons v. Barnes,* 871 P.2d 516, 522–23 (Utah 1994), and if the defendant fails to establish prejudice, "we need not determine whether counsel's performance was [in fact] deficient," *State v. Frame,* 723 P.2d 401, 405 (Utah 1986).

### 1. Admitting sexual assault occurred

■ Defendant argues that trial counsel was deficient in conceding during opening argument that H.H. had been sexually abused. We disagree.

Although defense counsel must vigorously represent his or her client, "counsel [is] not required to develop every conceivable defense that [is] available." *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114, 127 (1995). This would seem especially so where evidence on the issue weighs heavily in favor of the State and a decision to dispute the issue could negatively affect counsel's credibility with the fact-finder when asserting other, more viable defenses.

In this case, the State had substantial evidence that H.H. had in fact been sexually abused. In light of that evidence, it was not unreasonable for defense counsel to concede that issue. Indeed, in doing so, defense counsel could then align himself with any outrage felt by the jury toward the perpetrator and still credibly argue that his client was not that person. We thus conclude that defense counsel's decision to concede H.H.'s sexual abuse was not deficient, but rather, in light of the circumstances of this case, could be considered sound trial strategy.

### 2. Failing to move to exclude evidence of similar sex acts

■ Defendant also argues that trial counsel was deficient in failing to move to exclude C.P.'s testimony concerning how defendant used to bind her before engaging in sexual activity. Here, too, we disagree.

" 'The failure of counsel to make motions or objections which would be futile if raised does not constitute ineffective assistance.' " *Parsons,* 871 P.2d at 525 (quoting *Codianna v. Morris,* 660 P.2d 1101, 1109 (Utah 1983)). Thus, "[t]o establish a claim of ineffectiveness based on an oversight or misreading of law, a defendant bears the burden of demonstrating why, on the basis of the law in effect at the time of trial, his or her trial counsel's performance was deficient." *State v. Dunn,* 850 P.2d 1201, 1228 (Utah 1993). Defendant has not met his burden in this case.

At the time of defendant's trial, Rule 404(b) of the Utah Rules of Evidence excluded evidence of prior bad acts if the purpose was to establish a propensity to commit the crime charged. *See* Utah R. Evid. 404(b) (1991). However, such evidence was admissible to establish some other material element of the crime, such as identity. *See State v. Featherson,* 781 P.2d 424, 426 (Utah 1989) (holding "[e]vidence of other crimes, wrongs, or acts may be admitted if it has 'a special relevance to a controverted issue and is introduced for a purpose other than to show the defendant's predisposition to criminality.' " (citation omitted)). Thus, for example, "identity ... could be shown by the fact that the same pattern was followed in the commission of the two offenses." *Featherson,*

781 P.2d at 430.[8]

In this case, the disputed issue at trial was the identity of H.H.'s abuser. Defendant's prior sexual conduct with his wife was strikingly similar to the conduct to which H.H. testified she was subjected; this evidence was highly probative on the identity issue and, thus, admissible under Rule 404(b). Trial counsel's failure to pursue his initial objection to this evidence, therefore, was not deficient.

### 3. Miscellaneous claims of ineffective assistance

Defendant also claims his trial counsel was deficient in failing to adequately participate in jury voir dire, in failing to investigate and present additional medical evidence on chlamydia, in conducting several off the record discussions with the court, and in placing potentially damaging transcripts into the record.[9] However, for none of these claims does defendant demonstrate prejudice.

Defendant argues, for example, that trial counsel should have conducted additional voir dire on two jurors who he claims, because of their occupations, evidenced a possible bias. However, the trial court questioned the jury pool concerning any biases they had toward law enforcement officers, about any personal experiences with sex-related crimes, and about their ability to decide the case on the evidence. Neither of the two jurors now challenged indicated any inability to approach the case impartially. *See State v. Lafferty*, 749 P.2d 1239, 1251 (Utah 1988) (holding no prejudice when some jurors had expressed opinion before trial that defendant was guilty, noting that "after the trial judge had questioned them carefully, each unequiv-

ocally stated that he or she would set aside preconceived notions . . . and decide the case on the evidence presented at trial."), *habeas granted on other grounds,* 949 F.2d 1546 (10th Cir.1991). Although defendant suggests numerous questions which counsel could have asked the jurors, he "has not demonstrated that further inquiry into each juror[ ] . . . would have altered the outcome of his [trial]." *Parsons v. Barnes,* 871 P.2d 516, 526 (Utah 1994). Thus, defendant's claim fails.

Defendant also claims trial counsel was deficient for failing to investigate and present additional medical evidence on chlamydia. This evidence, defendant argues, would have aided in his defense because defendant tested negative for chlamydia prior to trial. To demonstrate prejudice from counsel's failure to investigate, a defendant "must demonstrate a reasonable probability that further investigation would have yielded sufficient information to alter the outcome" of his trial. *Id.* at 523–24. In this case, numerous witnesses testified concerning how a child could contract chlamydia, whether a suspect's negative test for chlamydia excludes him as one who could have passed the disease, and the extent to which treatment is required to overcome the disease. Defendant has failed to demonstrate how further investigation would have produced evidence other than that already presented at trial. Thus, defendant has failed to demonstrate how additional investigation would have provided him with "sufficient information to alter the outcome" of his trial. *Id.*

Defendant also claims trial counsel was ineffective because he failed to make an adequate record of the objections and mo-

---

**8.** Defendant's reliance on *State v. Doporto,* 935 P.2d 484 (Utah 1997), is misplaced because that case, which placed new constraints on the admission of evidence under Rule 404(b), was decided after defendant's trial. Furthermore, the holding in *Doporto* has been superseded by a 1998 amendment to Rule 404(b). *See* Utah R. Evid. 404(b) (1998); Committee Notes to Utah R. Evid. 404(b) (1998).

**9.** Defendant's ineffectiveness claims based on counsel's delay in invoking the exclusionary rule, his failure to object to cumulative hearsay, his failure to move for dismissal, and his failure to

provide mitigating evidence at sentencing are without merit; thus, we do not address them further. *See State v. Carter,* 776 P.2d 886, 888 (Utah 1989). Defendant's claims based on counsel's failure to object to Hansen's expert testimony and his failure to object during closing argument have already been considered under the plain error doctrine above. *See State v. Ellifritz,* 835 P.2d 170, 174 (Utah Ct.App.1992) (stating common standard of review is applicable when defendant raises both plain error and ineffective assistance arguments).

tions which he made off the record. However, although defendant appears to suggest that his right to appeal has thus been prejudiced, see *State v. Rawlings*, 829 P.2d 150, 152–53 (Utah Ct.App.1992) (upholding trial court's order because "[i]n the absence of an adequate record on appeal, we cannot address the issues raised and presume the correctness of the disposition made by the trial court."), defendant cites to no part of the record which suggests that the record gaps contain possible reversible errors, see *State v. Menzies*, 845 P.2d 220, 232 (Utah 1992) (stating "showing of prejudice [is required] to overturn a conviction on the basis of transcription errors"), nor has he contended he was prejudiced by a ruling on the issue discussed off the record, see *id.* at 236. Having failed to establish prejudice from an inadequate record, defendant's argument fails.

Defendant lastly claims trial counsel was deficient in placing documents into the record that contained damaging hearsay from interviews with H.H. and her mother. However, many witnesses, including both H.H. and her mother, testified at trial as to what H.H. had told others concerning the sexual abuse. Defendant fails on appeal to highlight anything in the documents which is other than cumulative of that testimony. Once again, he has failed to establish prejudice.

Based on the foregoing, we conclude defendant has failed to demonstrate that he was denied effective assistance of counsel at trial.

### Sufficiency of the Evidence

 Next, defendant claims there was insufficient evidence to support his convictions. In a jury trial, "the jury serves as the exclusive judge of both the credibility of witnesses and the weight to be given particular evidence." *State v. Workman*, 852 P.2d 981, 984 (Utah 1993). This court reverses a jury verdict only if, after viewing all the evidence and inferences therefrom in the light most favorable to that verdict, it finds the evidence " 'sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted.' " *State v. Span*, 819 P.2d 329, 332 (Utah 1991) (quoting *State v. Petree*, 659 P.2d 443, 444 (Utah 1983)).

In this case, H.H. never varied in her description of the perpetrator—a man with curly hair and fuzz on his face—or in her identification of that man as her stepfather, Mark. H.H. was also consistent in her testimony concerning the circumstances under which the abuse occurred—the house H.H. lived in at the time, the location of H.H.'s mother and brothers during the abuse, and the method in which the perpetrator bound her. On many of these facts, H.H.'s testimony was corroborated by the testimony of her mother, her half-brothers, defendant himself, and Detective Cazier. Indeed, H.H.'s mother testified that defendant used to bind her in the same manner to which H.H. testified.

Despite this evidence, defendant argues that his convictions must be reversed because H.H.'s testimony was sometimes inconsistent and confused, and because H.H. had failed to pick defendant out of a lineup that occurred just prior to trial. Although we agree that H.H.'s testimony on peripheral issues was not always consistent, none of that testimony undermines the sufficiency of the evidence against defendant. *See State v. Gentry*, 747 P.2d 1032, 1039 (Utah 1987) (rejecting insufficiency argument, noting "[a]lthough the victim had different recollections of certain details of the assault, that fact is insufficient to reverse the conviction."); *State v. Garcia*, 744 P.2d 1029, 1030 (Utah Ct.App. 1987) (upholding conviction even though victim had recited several different versions of incident).

Similarly, the fact that H.H. could not pick defendant out of a lineup is not determinative. The abuse occurred in 1987, when H.H. was approximately five years old. The lineup took place in 1991. Between 1987 and 1991, H.H. had no contact with defendant. Defendant looked different in 1991 than he did in 1987. The fact that H.H., at age nine or ten, could not pick out a man that she had known four years prior and who looked different at the time she knew him is insufficient to upset defendant's convictions.

We thus conclude there was sufficient evidence presented at trial to support defendant's convictions.

### Sentencing

Finally, defendant argues that the trial court abused its discretion in finding sufficient aggravating circumstances under section 76–3–201 of the Utah Code [10] to support minimum mandatory sentences of fifteen years on each of defendant's counts. This court " 'does not disturb a sentence unless it exceeds that prescribed by law or unless the trial court has abused its discretion.' " *State v. Russell,* 791 P.2d 188, 192 (Utah 1990) (quoting *State v. Shelby,* 728 P.2d 987, 988 (Utah 1986)). "An abuse of discretion may be manifest if the actions of the judge in sentencing were 'inherently unfair' or if the judge imposed a 'clearly excessive' sentence." *Id.* at 192–93 (quoting *State v. Gerrard,* 584 P.2d 885, 887 (Utah 1978)).

On appeal, defendant challenges only two of the four aggravating circumstances upon which the trial court based its sentencing determination. Specifically, defendant challenges the trial court's findings of "substantial bodily harm" and of a "non-familial relationship of trust." However, because defendant does not challenge the trial court's findings that the crime perpetrated "was a very cruel type of crime" and that the victim was "unusually vulnerable," we need not determine whether the trial court erred in considering the two disputed bases. *See State v. Strunk,* 846 P.2d 1297, 1301 (Utah 1993) (affirming maximum minimum mandatory sentence where three of four aggravating factors referenced by trial court supported that sentence and citing *State v. Lovell,* 758 P.2d 909, 913 (Utah 1988), "where we concluded that either one of two aggravating circumstances found by the trial court was sufficient to support the sentences imposed."); *Russell,* 791 P.2d at 192 (holding "[a]ny error in [trial court's] citing the severity of the offenses as an aggravating factor was ... harmless" where there were "additional aggravating factors."). Because either of the trial court's unchallenged bases is sufficient to support defendant's sentences, we affirm the trial court's determination.[11]

### CONCLUSION

We conclude that the trial court did not commit plain error in allowing expert testimony as to H.H.'s truthfulness concerning the fact that she had been sexually abused where defendant conceded in oral argument that such abuse had occurred. We also conclude that the trial court did not commit plain error in allowing the State to emphasize H.H.'s honesty during closing argument where the State's argument focused primarily on the evidence presented at trial and that evidence was substantial in identifying defendant as the perpetrator. We further conclude that the State did not improperly elicit testimony concerning defendant's post-arrest silence where the comment was isolated and the State did not use the comment to undermine defendant's right to silence.[12] In addition, we conclude that defendant was not denied effective assistance at trial and that

10. Section 76–3–201 sets forth the procedures which govern imposition of a minimum mandatory sentence. *See* Utah Code Ann. § 76–3–201 (Supp.1991); *State v. Gibbons,* 779 P.2d 1133, 1137 (Utah 1989). At the time of defendant's sentencing, that statute provided, in relevant part:

(5) (a) If a statute under which the defendant was convicted mandates that one of three stated minimum terms shall be imposed, the court shall order imposition of the term of middle severity unless there are circumstances in aggravation or mitigation of the crime.
. . . .
(e) The court in determining a just sentence shall consider sentencing guidelines regarding aggravation and mitigation promulgated by the Commission on Criminal and Juvenile Justice. Utah Code Ann. § 76–3–201 (Supp.1991).

11. Defendant also claims his sentences are disproportionately harsh. We do not address this claim because we find it to be without merit. *See State v. Carter,* 776 P.2d 886, 888 (Utah 1989).

12. Because no substantial errors were committed in this case, we do not reach defendant's claim under the cumulative error doctrine. *See State v. Rammel,* 721 P.2d 498, 502 (Utah 1986).

there was sufficient identification evidence to support defendant's convictions. Finally, we conclude that the trial court did not abuse its discretion in sentencing defendant to a minimum mandatory term of fifteen years for each conviction. We thus affirm both defendant's convictions and his sentences.

WILKINS, Associate P.J., concurs.

BENCH, J., concurs in result.