2005 UT App 419

**STATE of Utah, Plaintiff and Appellee,**

**v.**

**Roy Don ROBERTSON, Defendant and Appellant.**

**No. 20040327–CA.**

Court of Appeals of Utah.

Oct. 6, 2005.

Samuel Bailey, Bailey & Torgenson PLLC, Price, for Appellant.

Mark L. Shurtleff, Attorney General's Office, and Erin Riley, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BILLINGS, DAVIS, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 Roy Don Robertson appeals from his conviction for aggravated burglary, a first degree felony. *See* Utah Code Ann. § 76-6-203 (2003). We affirm.

## BACKGROUND

¶ 2 At about one A.M. on January 31, 2004, Wayne King returned to his home to find Robertson on his enclosed and locked porch. King concluded that Robertson had entered

the home, and subsequently the porch, through a window, because the window was open and the screen had been removed. King picked up a baseball bat and confronted Robertson. Robertson responded by standing and walking out of King's house. As Robertson left, King noticed that he was carrying a bag, which, due to the disarray King saw in the home, King believed might contain some of King's belongings. King called 911 to report the burglary, and then he ran out of the house to chase Robertson down. When he caught him, King again confronted Robertson and a fight ensued. During the fight, King noticed that Robertson was swinging at him with something "shiny," and King suspected that Robertson had a knife. King's face was cut during the fight, but he was able to gain the upper hand and subdue Robertson before the police arrived. Upon arresting Robertson, the police discovered an empty knife scabbard on his belt. They searched the area for the knife, but the ground was snow-covered and no knife was found.

¶ 3 Robertson was charged with aggravated burglary and was convicted by a jury in March 2004. During the trial, the State presented the testimonies of Mr. and Mrs. Kilcrease. The couple testified that they had seen a man who looked like Robertson walking through town on the day before the burglary. That man was carrying a bag and wearing a knife scabbard in which he carried a "pirate knife." Although Mr. Kilcrease was certain that Robertson was the man that they saw, Mrs. Kilcrease could only testify that he was similar. Following the presentation of the State's case, Robertson moved for both dismissal of the charges and for a directed verdict, both of which the trial court denied. He later renewed these motions, which were again denied. He now appeals his conviction for aggravated burglary.

## ISSUES AND STANDARD OF REVIEW

■ ¶ 4 Robertson asserts that the trial court erred in denying his for cause challenges to two members of the jury venire who were eventually seated as jurors. We will reverse a trial court's decision concerning a for cause challenge only if we determine the court has exceeded the bounds of its permitted range of discretion. *See State v. Wach*, 2001 UT 35,¶ 25, 24 P.3d 948.

■ ¶ 5 Robertson also argues that his trial counsel was ineffective. "When, as in this case, the claim of ineffective assistance of counsel is raised for the first time on appeal, we resolve the issue as a matter of law." *State v. Strain*, 885 P.2d 810, 814 (Utah Ct.App.1994) (footnote omitted).

■ ¶ 6 Finally, Robertson argues that the trial court erred in denying his motion for either a directed verdict or dismissal. "The grant or denial 'of a motion to dismiss is a question of law [that] we review for correctness, giving no deference to the decision of the trial court.'" *State v. Hamilton*, 2003 UT 22,¶ 17, 70 P.3d 111 (citations omitted) (quoting *Krouse v. Bower*, 2001 UT 28,¶ 2, 20 P.3d 895).

## ANALYSIS

■ ¶ 7 Robertson argues that the trial court violated his right to a fair and unbiased jury when it denied his for cause challenges to two jurors.

To ascertain whether a new trial is warranted for failure to dismiss a prospective juror for cause, we apply a two-part test. First, we consider whether the trial court exceeded its discretion in failing to excuse the prospective juror for cause. Second, we assess whether the trial court's failure to strike the prospective juror actually prejudiced the party seeking the new trial.

*Harding v. Bell*, 2002 UT 108,¶ 16, 57 P.3d 1093 (citing *State v. Wach*, 2001 UT 35,¶ 24, 24 P.3d 948). However, even if the trial court erred, the supreme court has clearly stated that it is the defendant's duty to cure the error through the exercise of his peremptory challenges, and that the failure to do so constitutes a waiver of any objection to the trial court's action on appeal. *See Wach*, 2001 UT 35 at ¶ 36 & n. 3, 24 P.3d 948. In this context, a defendant cures the error by using some or all of his peremptory strikes to eliminate the challenged, but not struck, juror or jurors, and if he fails to do so he waives any objection to the trial court's failure to strike. *See id.* Assuming that the

defendant has cured, we do not directly examine the trial court's alleged error, but instead we focus our attention on the jury that was seated and consider whether it was fair and unbiased. *See id.*[1]

■ ¶ 8 Robertson alleges that the trial court erred in denying his for cause challenges. Nonetheless, we do not address his contention because Robertson has failed to cure any potential error. After the trial court denied his challenges to jurors Everett Johns and Amy Rasmussen, Robertson had the opportunity to use his peremptory challenges to remove them. He chose instead to expend all of his challenges on other jurors, which resulted in Johns and Rasmussen being seated on the jury. Under the rule articulated in *Wach*, this clearly amounts to an affirmative waiver of his objections to these jurors, and we therefore reject Robertson's attempt to resurrect his objections on appeal.[2]

■ ¶ 9 Robertson next asserts that trial counsel's performance was ineffective. To establish ineffective assistance of counsel, Robertson " 'must show that trial counsel's performance was deficient in that it "fell below an objective standard of reasonableness," and that the deficient performance

---

1. *Utah case law on this subject has been in flux.* There is no question that trial courts have a duty to seat an impartial jury and the power to sua sponte dismiss unqualified or biased jurors. *See State v. Calliham,* 2002 UT 86, ¶ 57, 55 P.3d 573. To ensure the seating of an unbiased jury, trial courts have limited discretion, or in certain circumstances no discretion, to limit voir dire questions that "have some possible link to possible bias, [or] when proposed voir dire questions go directly to the existence of an actual bias." *State v. Saunders,* 1999 UT 59, ¶ 43, 992 P.2d 951. "Once statements are made during voir dire that 'facially raise a question of partiality or prejudice' " the trial court must either dismiss the juror for cause or subject the juror to probing questions that rebut any inference of bias that resulted from the initial statements. *State v. Wach,* 2001 UT 35, ¶ 27, 24 P.3d 948 (quoting *State v. Bishop,* 753 P.2d 439, 451 (Utah 1988)). Moreover, the supreme court has clearly stated that "judges should err on the side of caution in ruling on for-cause challenges and that the scope of judicial discretion afforded a trial judge must be evaluated in light of the ease with which all issues of bias can be dispensed by the simple expedient of replacing a questionable juror with another whose neutrality is not open to question." *Id.* at ¶ 51.

   However, in 1997, the supreme court determined that the burden for ensuring that the trial court performed its duty in this regard rested not with the trial court, nor with the appellate courts, but rather with the defendant. *See State v. Baker,* 935 P.2d 503, 506–09 (Utah 1997) (adopting as Utah law the "cure or waive" rule). Under the "cure or waive" rule, the court recognized that peremptory challenges are not constitutional in nature and, as a result, that requiring a defendant to expend peremptory challenges to cure a trial court's error is not prejudicial to the defendant. *See id.* at 506 (citing *State v. Menzies,* 889 P.2d 393, 398–400 (Utah 1994)). The *Baker* court explained the rationale behind this rule by stating that "all parties, including the defense, have a duty not to sow error" and that a failure to use a peremptory challenge to strike a challenged juror that the court refused to excuse amounted to "a tactical withdrawal of his objection" to the juror. *Id.* at 506–07. In adopting this rule, the court implicitly overruled portions of cases from this court; namely *State v. Woolley,* 810 P.2d 440, 443 (Utah Ct.App.1991) (stating "[i]t is prejudicial error to compel a party to exercise a peremptory challenge to remove a prospective juror who should have been removed for cause") and its progeny. *See State v. Baker,* 884 P.2d 1280, 1285–87 (Utah Ct.App.1994) (refusing to adopt cure or waive rule), *rev'd,* 935 P.2d 503 (Utah 1997) (adopting cure or waive rule); *see also State v. Lacey,* 665 P.2d 1311, 1312 (Utah 1983) ("It is well established that it is prejudicial error to compel a party to exercise a peremptory challenge to remove a venireman who should have been excused for cause after the venireman expressed bias and concern about whether he could remain impartial."). As it presently stands, although trial courts are charged with a duty to ensure that each jury is fair and unbiased, should they falter in this duty, we cannot hold them accountable absent a defendant's affirmative assistance. *See Wach,* 2001 UT 35 at ¶¶ 35–36, 24 P.3d 948 (holding that although the trial court erred, the defendant's failure to preserve his objection to certain jurors was fatal to his appeal). *But see Saunders,* 1999 UT 59 at ¶ 55, 992 P.2d 951 (holding that the cumulative effect of the trial court's unwarranted interference with voir dire and its failure to grant certain for cause challenges amounted to reversible error); *State v. King,* 2004 UT App 210, ¶ 25, 95 P.3d 282 (reversing the defendant's conviction even though the defendant failed to challenge possibly biased jurors in the first instance; in essence holding the trial court responsible for failing to perform its duty to seat a facially unbiased jury), *cert. granted,* 100 P.3d 220 (Utah 2004).

2. We are sympathetic to Robertson's claim; however, the facts of this case are far less compelling than the facts of *Baker,* and in the face of the supreme court's unwillingness to grant relief in *Baker,* we are unable to grant relief here.

prejudiced the outcome of the trial.' " *State v. Baker*, 963 P.2d 801, 806–07 (Utah Ct.App. 1998) (citations omitted). He " 'must [also] "identify specific acts or omissions that fell outside the wide range of professional assistance and illustrate that, absent those acts or omissions, there is a 'reasonable probability' of a more favorable result." ' " *State v. Simmons*, 2000 UT App 190,¶ 4, 5 P.3d 1228 (citations omitted). Finally, not only do we presume that counsel acted competently if we can articulate a rational basis for his actions, *see State v. Tennyson*, 850 P.2d 461, 468–69 (Utah Ct.App.1993) (stating "cases in various state and federal jurisdictions demonstrate that when trial counsel allows the seating of jurors, who upon initial voir dire inquiry appear biased, courts deny the ineffective assistance claim unless counsel's actions could not conceivably constitute legitimate trial tactics"), but "a claim of ineffective assistance of trial counsel premised on failure to challenge a juror for cause can succeed only if the juror was biased as a matter of law," *Simmons*, 2000 UT App 190 at ¶ 12, 5 P.3d 1228.

■ ¶ 10 Robertson argues that trial counsel should have struck or further questioned three jurors: juror Allen Norton, who was hearing impaired, juror Charles Beal, whose brother-in-law is apparently employed in law enforcement, and juror Trevor Motte, who was the cousin of the State's witness

Theresa Kilcrease.[3] However, Robertson presents this court with nothing that would support a conclusion that any of these jurors were biased as a matter of law. Instead, he presents this court only with "numerous questions [that] counsel could have asked the jurors," *Baker*, 963 P.2d at 808, and fails to demonstrate how further inquiry along his suggested lines "would have altered the outcome of his trial," *id.* (quotations, citations, and alterations omitted). The trial court questioned each of these jurors as to their ability to be unbiased and to fairly evaluate the evidence, and the trial court, as well as trial counsel, were apparently satisfied with the jurors' responses.

¶ 11 Moreover, on appeal Robertson ignores certain realities that occur in the process of jury selection. Trial counsel had an opportunity to examine the juror questionnaires, each juror's body language and facial expressions, and the reactions that each juror had to the information that was presented to them. Counsel easily could have identified some factor present in any or all of these observations that led him to believe that the jurors challenged on appeal were well suited to serve on Robertson's jury.[4] *See, e.g., Simmons*, 2000 UT App 190 at ¶ 16, 5 P.3d 1228 (stating parenthetically " '[w]e need not come to a conclusion that counsel, in fact, had a specific strategy in mind. Instead, we need only articulate some plausible strategic explanation for counsel's behavior' "

---

**3.** Although on the surface, counsel's failure to further question juror Motte seems problematic, we are guided by the principle that we "presume that [counsel's] decision not to challenge the . . . venireperson for cause was appropriate, based on our presumption that trial counsel rendered effective assistance." *Crawford v. State*, 2 P.3d 1055, 1057 (Wyo.2000). Reversing a conviction, or excusing a juror for "implied juror bias," is now done in only the most extreme of situations, *see Smith v. Phillips*, 455 U.S. 209, 222, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (O'Connor, J., concurring) ("Some examples [of implied bias] might include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction."), and a defendant is charged with demonstrating actual bias to obtain relief on appeal, *see, e.g., State v. Sanchez*, 120 N.M. 247, 901 P.2d 178, 183–84 (1995) (denying the defendant's claim that the trial court erred in

seating a juror whose sister worked for the prosecuting agency as the victim's advocate who was working with the victim in the case and sitting with the victim's family in the courtroom).

**4.** Robertson's challenge to juror Norton is best described as a challenge to his competence, rather than a challenge for bias. *See State v. Brooks*, 868 P.2d 818, 825 (Utah Ct.App.1994) (explaining incompetence versus bias). However, the mere fact that juror Norton was "a little hard of hearing" does not amount to incompetence, nor does it suggest that trial counsel was ineffective for failing to determine the extent of the hearing impairment. It is clear from the record that juror Norton could hear, and nothing in the record suggests otherwise. Consequently, Robertson has failed to demonstrate that juror Norton was incompetent to serve on the jury; thus, he has failed to demonstrate even the slightest prejudice from trial counsel's failure to further question juror Norton concerning his hearing loss.

(citation omitted) ). This view is bolstered by counsel's decision to challenge some members of the venire, but not others. As we said in *Simmons*, "[w]e can infer from trial counsel's different treatment of these two prospective jurors that 'trial counsel discerned some qualitative difference between the juror he challenged for cause and those he did not.'" *Id.* (citation and alterations omitted). Consequently, in the absence of our concluding that a juror was biased as a matter of law, we will not second-guess trial counsel's choices, and we decline to find counsel ineffective for his choices in juror selection.

¶ 12 Robertson also argues that counsel was ineffective in failing to request a limiting instruction concerning the testimony of the Kilcreases, who testified as witnesses for the State. Robertson is correct that under certain circumstances trial courts must give an instruction concerning the weaknesses inherent in eyewitness identification. However, those circumstances are limited to cases where the eyewitness identification is "a central issue in the case," *State v. Long*, 721 P.2d 483, 492 (Utah 1986), and when it is not, the trial court retains significant discretionary authority to refuse to submit such an instruction to the jury.

¶ 13 The identification testimony of the witnesses at issue in this case was in no way central to the issue of whether Robertson was guilty of aggravated burglary. The witnesses both testified simply that on a date prior to the date of the burglary, they saw a man who looked like Robertson walking around with a large "pirate knife" in a belt scabbard. At most, their testimony was corroborative of the victim's testimony that Robertson cut him with a knife while trying to escape. Thus, the trial court would have been well within its discretion in denying Robertson such an instruction. Robertson's identity as the person found in the victim's house was not in dispute, nor was the fact that he was arrested wearing a knife sheath. Moreover, the cuts suffered by the victim during his altercation with Robertson certainly supported an inference that Robertson had, at one time during the altercation, a knife that may have come from the scabbard

on his belt. Consequently, Robertson has presented us with no reason to believe that had counsel requested an eyewitness instruction the trial court would have granted the request or that the outcome of his trial would have been different. Therefore, we reject his ineffective assistance of counsel claim.

¶ 14 Finally, at the conclusion of the presentation of the State's evidence, Robertson moved to dismiss the charges or for a directed verdict. The trial court denied his motion, a decision that Robertson argues was in error because the State failed to introduce any evidence of his intent in entering the victim's house. "'A defendant's motion to dismiss for insufficient evidence at the conclusion of the State's case in chief requires the trial court to determine whether the defendant must proceed with the introduction of evidence in his defense.'" *State v. Hamilton*, 2003 UT 22, ¶ 40, 70 P.3d 111 (citations omitted). "If the State fails to produce 'believable evidence of all the elements of the crime charged,' the trial court must dismiss the charges." *Id.* (quoting *State v. Clark*, 2001 UT 9, ¶ 13, 20 P.3d 300 (additional citations omitted) ). But should the court find that "the jury acting fairly and reasonably could find the defendant guilty beyond a reasonable doubt, the judge is required to submit the case to the jury for determination of the guilt or innocence of the defendant." *Clark*, 2001 UT 9 at ¶ 13, 20 P.3d 300 (emphasis omitted) (quotations, citations, and emphasis omitted).

> We will uphold the trial court's decision to submit a case to the jury if upon reviewing the evidence and all inferences that can be reasonably drawn from it, the court concludes that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt.

*Id.* (quoting *State v. Adams*, 955 P.2d 781, 787 (Utah Ct.App.1998)).

¶ 15 Robertson argues only that the State failed to introduce evidence that he entered the home with the intent to commit a theft. "Since the intent to commit theft is a state of mind, which is rarely susceptible of direct proof, it can be inferred from conduct and attendant circumstances in the light of

human behavior and experience." *State v. Brooks,* 631 P.2d 878, 881 (Utah 1981). An inference is defined

> as a logical and reasonable conclusion of the existence of a fact in a case, not presented by direct evidence as to the existence of the fact itself, but inferred from the establishment of other facts from which by a process of logic and reason, based upon common experience, the existence of the assumed fact may be concluded by the trier of fact.

*Id.* at 881–82. "Under this premise, the authorities uniformly agree that where one breaks and enters the dwelling of another in the nighttime, without the latter's consent, an inference may be drawn that he did so to commit larceny." *Id.* at 881.

¶ 16 The State presented evidence that Robertson was discovered lying on the floor of the victim's home after midnight. He was in the home without the victim's permission, and he had entered the home through a window after prying off a window screen. While in the home, according to the victim, Robertson had moved a variety of items in both the kitchen and the victim's bedroom, and at the time, the victim was unsure whether anything was missing. Finally, when he was confronted by the victim, Robertson fled the scene and provided no explanation for his actions. Although it is certainly possible that Robertson broke into the victim's home for shelter and warmth, the record supports the trial court's determination that the jury could reasonably conclude beyond a reasonable doubt that Robertson broke into the victim's home intending to commit a theft. Hence, we conclude that the trial court did not err in denying both Rob-

ertson's motion to dismiss and his motion for a directed verdict because there was sufficient evidence to send this issue to the jury.

## CONCLUSION

¶ 17 Robertson failed to cure any possible trial court error when he decided not to use his peremptory strikes to remove the jurors he had earlier tried to remove for cause. Robertson's trial counsel was not ineffective in not moving to strike other jurors because it is possible that counsel had legitimate reasons for wanting those jurors on the jury. Counsel was also not ineffective for failing to submit an eyewitness instruction to the trial court concerning the Kilcreases' testimony. The issues testified to by the Kilcreases were of little material value to the actual charges levied against Robertson, and it is highly likely that he would have been convicted in the absence of their testimony. Finally, the evidence was sufficient to support Robertson's conviction; consequently, the trial court acted properly in denying his motions for a directed verdict and to dismiss.

¶ 18 Accordingly, we affirm.

¶ 19 I CONCUR: JAMES Z. DAVIS, Judge.

¶ 20 I CONCUR IN THE RESULT: JUDITH M. BILLINGS, Presiding Judge.