2001 UT App 123

**STATE of Utah, Plaintiff and Appellee,**

v.

**Jesus Ramirez LOPEZ, Defendant and Appellant.**

No. 20000289–CA.

Court of Appeals of Utah.

April 12, 2001.

Kent R. Hart and Lisa J. Remal, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Mark L. Shurtleff and Marian Decker, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BILLINGS, DAVIS, and ORME.

## OPINION

DAVIS, Judge:

¶ 1 Appellant Jesus Ramirez Lopez appeals his convictions for aggravated kidnaping, in violation of Utah Code Ann. § 76–5–302 (1999), aggravated burglary, in violation of Utah Code Ann. § 76–6–203 (1999), aggravated assault, in violation of Utah Code Ann. § 76–5–103 (1999), and possession of a weapon by a restricted person, in violation of Utah Code Ann. § 76–10–503(2)(a) (1999). Lopez argues that the trial court erred when it refused to merge the aggravated kidnaping charge with the attempted murder charge, and that there was insufficient evidence to support his conviction for aggravated burglary. We affirm.

## BACKGROUND

■ ¶ 2 "We view the facts in the light most favorable to the jury verdict and recite them accordingly." *State v. Loose,* 2000 UT 11, ¶ 2, 994 P.2d 1237.

¶ 3 Lopez married Michelle Pullan in September of 1998. After several months, Lopez and Pullan separated. Shortly after the separation, Pullan obtained a protective order prohibiting Lopez from having any contact with her. In June of 1999, despite the protective order, Lopez began telephoning Pullan daily. During these phone calls, Lopez apologized repeatedly, expressed his love for Pullan, and begged for a second chance. Pullan consistently rejected Lopez's overtures.

¶ 4 On June 13, 1999, Lopez telephoned Pullan and stated, "I know where you'll be all weekend; I know what you're doing; I know who you're with; I've been watching you; I'm not going to let this go." Later that evening, Pullan found Lopez standing in her living room. Lopez smelled of alcohol, his speech was slurred, and his eyes were bloodshot. Pullan repeatedly asked Lopez to leave; however, Lopez refused and insisted they talk. Lopez then began crying and told Pullan that he was sorry for his behavior. Pullan again asked Lopez to leave, and Lopez again refused. Lopez then went into the bathroom.

¶ 5 While Lopez was in the bathroom, Pullan thought about fleeing from the apartment; however, before she could escape, Lopez emerged from the bathroom with his wrists cut and bleeding. Once more, Pullan asked Lopez to leave, but Lopez began crying again and told Pullan that he could not live without her. Then, as Lopez wandered by the apartment's front door, Pullan opened the door, pushed Lopez outside, and locked the door.

¶ 6 After she ousted Lopez, Pullan dialed 911. However, while Pullan was on the phone, Lopez broke the living room window and reentered the apartment. Lopez then chased Pullan into the kitchen. In the kitchen, Lopez picked up a knife, pointed it at his chest, and threatened to stab himself. Pullan again begged Lopez to leave her alone;

however, Lopez laid down on top of the knife as if he was trying to stab himself. Pullan then ran for the front door. Before Pullan could reach the front door, Lopez got up, grabbed Pullan, and placed the knife to her throat. Lopez then dragged Pullan, who was kicking and screaming, out of the apartment. Alarmed by the sound of breaking glass and Pullan's screams, several neighbors called 911.

¶ 7 Upon reaching the top of the stairs leading from Pullan's second floor apartment to the sidewalk, Lopez placed Pullan in a headlock and dragged her down the stairs. Lopez then wrested Pullan around the building and down a sidewalk to where he had parked his truck. In the parking lot, Lopez attempted to force Pullan into the cab of his truck; however, Pullan resisted and threw herself onto the ground. Lopez then stabbed Pullan repeatedly in the arm, head, and neck. Lopez did not stop stabbing Pullan until he was tackled by a neighbor. Several neighbors then restrained Lopez until the police arrived.

¶ 8 At trial, Lopez moved for a dismissal arguing that his intoxication prevented him from forming the required mental state to be convicted of the crimes. Lopez also moved the court to merge the aggravated kidnaping charge into the attempted murder charge. The trial court denied both motions. The jury convicted Lopez of aggravated kidnaping, aggravated burglary, aggravated assault,[1] and possession of a weapon by a restricted person.

## ISSUES AND STANDARDS OF REVIEW

¶ 9 Lopez argues that the trial court erred when it refused to dismiss the aggravated kidnaping charge because, in this case, the aggravated kidnaping charge should merge with the aggravated assault charge.[2] "We review the evidence presented at trial in a light most favorable to the verdict." *State*

v. *Colwell,* 2000 UT 8, ¶ 42, 994 P.2d 177. Whether two or more crimes merge, thereby precluding separate convictions, is then "essentially an issue of statutory construction that we review for correctness, according no particular deference to the trial court." *State v. Pierson,* 2000 UT App 274, ¶ 8, 12 P.3d 103 (quoting *State v. Mecham,* 2000 UT App 247, ¶ 20, 9 P.3d 777), *cert denied,* 20 P.3d 403, 2001 WL 129053, 2001 Utah LEXIS 15.

¶ 10 Lopez also asserts that there was insufficient evidence to support his conviction for aggravated burglary because the State did not prove he entered the apartment with the intent to commit a felony. "We will reverse a jury verdict only when, after viewing the evidence and all inferences drawn therefrom in a light most favorable to the verdict, we find that the evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust." *State v. Silva,* 2000 UT App 292, ¶ 13, 13 P.3d 604 (internal quotations and citations omitted).

## ANALYSIS

### I) Merger of Aggravated Kidnaping With Aggravated Assault

¶ 11 Lopez first argues that the evidence did not support his conviction for aggravated kidnaping because the detention and movement of Pullan were inherent in the aggravated assault; therefore, the aggravated kidnaping merged with the aggravated assault.

¶ 12 Utah courts have adopted a three-part test to determine if kidnaping merges with another crime:

> "If a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnaping the resulting movement or confinement:
>
> (a) Must not be slight, inconsequential and merely incidental to the other crime;

---

1. The jury was instructed that aggravated assault was a lesser included offense of attempted criminal homicide and that they could convict Lopez of aggravated assault if they found that he "used a dangerous weapon or other means or force likely to produce death or serious bodily injury."

2. We note that Lopez moved to dismiss the aggravated kidnaping charge prior to the verdict. However, the fact that the jury convicted Lopez of the lesser included offense of aggravated assault, rather than attempted homicide, does not affect our analysis regarding the correctness of the trial court's ruling.

(b) Must not be of the kind inherent in the nature of the other crime; and

(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection."

*State v. Finlayson,* 2000 UT 10, ¶ 23, 994 P.2d 1243 (quoting *State v. Buggs,* 219 Kan. 203, 547 P.2d 720, 731 (1976));[3] *see also Pierson,* 2000 UT App 274 at ¶ 19, 12 P.3d 103,.

■ ¶ 13 Applying this test to the facts in the present case, we are not persuaded that the trial court erred when it denied Lopez's motion to dismiss the charge of aggravated kidnaping. First, the facts indicate that Lopez's movement of Pullan was neither inconsequential nor incidental to the assault. Specifically, Lopez placed Pullan in a headlock and dragged her down a flight of stairs, around the apartment building, and down a sidewalk that spanned the length of the apartment building. Lopez then tried to force Pullan into his truck. Consequently, we do not regard Lopez's confinement and movement of Pullan as inconsequential. Furthermore, we are not persuaded that Lopez's detention and movement of Pullan were incidental to the aggravated assault. Lopez could have stabbed Pullan at any point after he grabbed the knife without confining or moving her. Therefore, Lopez's acts were not incidental to the stabbing.

¶ 14 Second, Lopez's movement and confinement of Pullan were not inherent in the aggravated assault perpetrated in this case, which was a stabbing. As noted above, Lopez could have stabbed Pullan without the type of confinement and movement that took place. Therefore, the confinement and movement were not inherent in Lopez's aggravated assault.[4]

¶ 15 Third, the confinement and movement had significance independent of the aggravated assault. Here, Lopez moved Pullan away from the site of the initial disturbance to the apartment complex's parking area. He then attempted to place Pullan into his truck. Lopez did not need to do any of these acts to assault Pullan with a knife. Therefore, the confinement and movement of Pullan had significance independent of her stabbing.

¶ 16 We note that the third prong of the *Finlayson* test contains the qualification that the kidnaping must make "the other crime substantially easier of commission or substantially lessen[ ] the risk of detection." *Id.* However, these are not necessarily words of limitation because there may be instances, such as here, in which the kidnaping and the "other crime" are virtually independent of one another. In such instances, it is irrelevant whether or not the kidnaping made "the other crime substantially easier of commission or substantially lessen[ed] the risk of detection" because the facts had "independent significance sufficient to support a separate conviction for aggravated kidnaping." *Id.*

II) The Aggravated Burglary Conviction

¶ 17 Lopez next argues that the trial court should have dismissed the charge of aggravated burglary because the State failed to present sufficient evidence to prove that he

**3.** The *Buggs* analytical framework for determining whether kidnaping merges with a host crime is not limited to situations where defendant is charged under Utah Code Ann. § 76–5–302(1)(b)(ii) (1999) (stating person commits aggravated kidnaping if person acts with intent "to facilitate the commission, attempted commission or flight after commission or attempted commission of a felony"). *See Finlayson,* 2000 UT 10 at ¶ 23, 994 P.2d 1243 (conducting *Buggs* analysis even though the defendant was charged with a different permutation of aggravated kidnaping); *Pierson,* 2000 UT App 274 at ¶ 19, 12 P.3d 103 (conducting *Buggs* analysis when defendant was charged under three separate permutations of aggravated kidnaping). Thus, while the importance of the individual elements of the *Buggs* analytical framework will vary depending on the basis for the kidnaping charge, the *Buggs* test should be utilized whenever merger is argued.

**4.** Because of wide variations among factual scenarios constituting the commission of the host crime, whether movement and confinement are inherent in the host crime will almost always involve factual inquiry. For example, "[a]n instance of aggravated robbery without some detention would be unusual, but could happen, as in the case of a perpetrator clubbing an unsuspecting victim over the head and snatching her purse just as she fell to the ground." *State v. Mecham,* 2000 UT App 247, ¶ 29 n. 9, 9 P.3d 777.

entered or remained in Pullan's apartment with the intent to commit aggravated kidnaping. *See* Utah Code Ann. § 76–6–202 (1999) ("A person is guilty of burglary if he enters or remains unlawfully in a building or any portion of a building with intent to commit a felony or theft or commit an assault on any person.").

¶ 18 "It is well established that a defendant's burden on appeal when challenging the sufficiency of the evidence after a jury trial is to marshal the evidence in support of the verdict and then demonstrate that the evidence is insufficient when viewed in the light most favorable to the verdict." *Silva*, 2000 UT App 292 at ¶ 25, 13 P.3d 604 (internal quotations and citations omitted).

¶ 19 Lopez asserts that his irrational and intoxicated state prevented him from forming an intent to commit aggravated kidnaping. In support of his argument, Lopez points to favorable testimony indicating that he acted irrationally and appeared intoxicated when he committed the crimes. However, Lopez discounts the unfavorable testimony of several witnesses indicating that he was coherent, communicative, and understood questions. Therefore, Lopez is attempting to reargue the weight of the evidence on appeal. However, "[d]efendant may not reargue the weight of that evidence, relying upon testimony favoring his innocence and ignoring the conflicting testimony against him. The fact that defendant's evidence contradicts the jury's determination does not require reversal on appeal." *State v. Bingham*, 732 P.2d 132, 133 (Utah 1987). Further, we do not agree that "the evidence and its inferences are so 'inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted.'" *State v. Moore*, 802 P.2d 732, 738 (Utah Ct.App.1990) (citation omitted). Therefore, Lopez has not demonstrated that the evidence supporting his aggravated burglary conviction is insufficient when viewed in the light most favorable to the verdict. Accordingly, we affirm Lopez's conviction for aggravated burglary.

## CONCLUSION

¶ 20 The trial court did not err when it refused to merge the aggravated kidnaping charge with the charge of aggravated assault. Further, Lopez has not demonstrated that there was insufficient evidence to support his conviction for aggravated burglary. Accordingly, we affirm Lopez's convictions.

¶ 21 WE CONCUR: JUDITH M. BILLINGS, Judge, GREGORY K. ORME, Judge.