2002 UT App 288

**STATE of Utah, Plaintiff and Appellee,**

v.

**Anthony Allen DIAZ, Defendant and Appellant.**

**No. 990511–CA.**

Court of Appeals of Utah.

Sept. 6, 2002.

Wesley M. Baden, Uintah County Legal Defender, Vernal, for Appellant.

Mark L. Shurtleff, Attorney General, and Karen A. Klucznik, Assistant Attorney General, Salt Lake City, for Appellee.

Before DAVIS, GREENWOOD, and THORNE, JJ.

## OPINION

THORNE, Judge:

¶ 1 Defendant Anthony Allen Diaz was tried before a jury and convicted of child kidnaping, aggravated kidnaping, and aggravated sexual abuse of a child.[1] He now appeals from his conviction and sentencing for child kidnaping, a first degree felony, in violation of Utah Code Ann. § 76–5–301.1 (1997).[2] We affirm.

## BACKGROUND

¶ 2 "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly. We present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346 (citations and quotations omitted).

¶ 3 On May 26, Memorial Day, 1997, Diaz approached J.B., an eight-year-old girl, as she sat in front of a Wal–Mart store attempting to give away a litter of kittens. After briefly talking to J.B., Diaz asked her for a kitten. Although Diaz was carrying nothing, he told J.B. that he needed her to carry the kitten to his car. J.B. agreed and Diaz then led her away from the front of the store, where her mother had left her, and around the side of the building into the west side parking lot where Diaz had parked his car. At the car, Diaz grabbed the kitten from J.B., threw it into the car, and grabbed J.B.'s arm with sufficient force to cause bruising. He then pulled her toward him, pulled down his shorts, exposed his genitals, and told J.B. to "look at my big dick."

¶ 4 J.B. screamed, freed her arm from Diaz's grasp, and ran back toward the front of the store. Hearing the screams, J.B.'s mother, who had been in the store, ran out to find J.B. trembling and obviously frightened. J.B. told her mother what had happened, where it had happened, and described her assailant in very rough and broad terms. Soon thereafter, a police officer arrived and J.B. related the incident to him, again including a general description of her assailant and his car.

¶ 5 The police soon identified Diaz as a possible suspect. Therefore, the investigating officers asked J.B. to view a photo lineup. Prior to J.B.'s arrival at the police station, the investigating officers constructed a photo array that included photos of eight men who generally fit the rough description J.B. had provided. Prior to presenting J.B. with the array, the investigating officers asked her if she remembered what had happened on May 26, and if she remembered her assailant. After J.B. responded that she remembered both the incident and the man, the officers showed her the array. J.B. quickly identified the photo of Diaz as the only photo that looked like her attacker. Based on this identification, the investigating officers interviewed Diaz concerning the incident.[3] During the interview, Diaz made a series of marginally inculpatory statements. However, he consistently denied being at the Wal–Mart on the day of the assault and denied playing any role in the assault. Diaz failed to convince the officers of his innocence, and, following the two-hour interview, Diaz was arrested.

¶ 6 Ultimately, Diaz was charged with one count of aggravated kidnaping, or in the alternative, one count of child kidnaping, and one count of aggravated sexual abuse of a child. Following a November 1998 jury trial,[4] Diaz was convicted of aggravated kidnaping, child kidnaping, and aggravated sexual

---

1. In a hearing following Diaz's conviction, but prior to his sentencing, the trial court concluded that Diaz's detention of J.B. was incidental to the sexual abuse; therefore, the trial court merged Diaz's aggravated kidnaping conviction into his conviction for aggravated sexual abuse of a child.

2. Throughout this opinion, because no material changes occurred to the relevant statutory language between 1997 and 1999, we cite to the 1999 version of Utah Code Ann. § 76–5–301.1.

3. Prior to the interview, the interviewing officers read Diaz his *Miranda* rights, including his right to "stop answering questions at any time and have counsel appointed to you." Diaz affirmatively waived these rights orally and in writing.

4. Diaz's first trial on these charges ended in a mistrial following a prejudicial and unsolicited statement from a witness concerning Diaz's prior experience in prison.

abuse of a child.[5] On February 2, 1999, the trial court held a sentencing hearing wherein the court indicated its intention to sentence Diaz consecutively to ten years to life for aggravated kidnaping, and five years to life for aggravated sexual abuse of a child. But, based upon the prosecutor's request, the court stayed entry of the sentence until March 1, 1999, and granted the prosecutor an opportunity to submit information concerning Utah's treatment of habitual offenders.

¶ 7 In the interim, the trial court concluded that the nature of the conduct underlying Diaz's convictions warranted a merger analysis as articulated in *State v. Finlayson*, 956 P.2d 283 (Utah Ct.App.1998), *aff'd*, 2000 UT 10, 994 P.2d 1243. Accordingly, the trial court requested that the parties prepare to argue the applicability of merger to this situation, and rescheduled sentencing until March 25, 1999. Following a brief hearing concerning the merger issue, the trial court merged Diaz's aggravated kidnaping conviction into his conviction for aggravated sexual abuse of a child.

¶ 8 The trial court then directed the State to choose between sentencing Diaz for aggravated sexual abuse of a child or for child kidnaping. After a short period of consideration, the State asked that Diaz be sentenced under the child kidnaping statute. Therefore, in a proceeding wherein the trial court also sentenced Diaz for separate charges to which he had pleaded guilty previously, the trial court sentenced Diaz to fifteen years to life in prison for child kidnaping. Diaz now appeals.[6]

## ISSUES PRESENTED AND STANDARDS OF REVIEW

¶ 9 Diaz argues that several errors occurred warranting reversal of his conviction or, in the alternative, remand for the purpose of resentencing him for the appropriate conviction.

¶ 10 Diaz first argues that the trial court erred in failing to recognize that, under these circumstances, the crime of child kidnaping merges into the crime of aggravated sexual abuse of a child. Merger issues present questions of law, which we review for correctness. *See State v. Finlayson*, 2000 UT 10,¶ 6, 994 P.2d 1243. Subordinate to this argument is Diaz's claim that the trial court erred in permitting the State to choose between sentencing Diaz under the child kidnaping statute or the aggravated sexual abuse of a child statute and consequently sentencing Diaz to the longer term. We review the sentencing decisions of a trial court to determine whether the trial court exceeded its permissible range of discretion. *See State v. Houk*, 906 P.2d 907, 909 (Utah Ct.App.1995).

¶ 11 Diaz further argues the trial court failed to make the findings required to justify its departure from the middle, and therefore default, minimum mandatory prison term under the child kidnaping statute. Diaz's failure to preserve this claim results in our reviewing it for plain error. *See State v. Labrum*, 925 P.2d 937, 939–40 (Utah 1996).

¶ 12 Next, Diaz argues that the State presented insufficient evidence to support his convictions for either child kidnaping or aggravated sexual abuse. As a general rule, we will not consider a defendant's sufficiency of the evidence claim if the defendant has failed to raise it before the trial court absent, inter alia, a demonstration by the defendant that the trial court committed plain error by submitting the case to the jury. *See Holgate*, 2000 UT 74 at ¶¶ 11, 17, 10 P.3d 346.

---

5. While the information, and the proposed jury instructions submitted by both the State and Diaz, clearly identified child kidnaping as being charged in the alternative, the instructions actually submitted to the jury eliminated any language that would indicate that the charges were in the alternative. The jury subsequently convicted Diaz on all of the charges as submitted. However, after the jury was excused, and following Diaz's attorney's request for clarification, the trial court acknowledged the alternative nature of the charges and proceeded to consider only the primary charges for which Diaz was convicted.

6. While many procedural aspects of this case can be described as peculiar, as the dissent correctly points out, neither party appeals the aspects not addressed in this opinion, and we therefore do not address these issues. *See State v. Price*, 827 P.2d 247, 250 (Utah Ct.App.1992).

■ ¶ 13 Diaz further argues that his trial counsel was ineffective on several fronts. We review ineffective assistance of counsel claims raised for the first time on appeal for correctness. *See State v. Silva*, 2000 UT App 292, ¶ 12, 13 P.3d 604.

■ ¶ 14 Finally, Diaz argues that even if the individual errors are independently insufficient to support reversal of his convictions, the cumulative effect of these asserted errors is sufficient to justify reversal. "Under the cumulative error doctrine, we will reverse a jury verdict 'only if the cumulative effect of the several errors undermines ... confidence that a fair trial was had.'" *State v. Widdison*, 2001 UT 60, ¶ 73, 28 P.3d 1278 (citations omitted).

## ANALYSIS

### I. Merger

■ ¶ 15 Diaz first argues that under the merger doctrine, articulated in *Finlayson*, 2000 UT 10, 994 P.2d 1243, the trial court should have merged his child kidnaping conviction into his aggravated sexual abuse of a child conviction. We disagree.

¶ 16 We note initially that the question presented is somewhat unique.[7] Rather than addressing the merger of either kidnaping or aggravated kidnaping into a charged companion crime, *see, e.g., Finlayson*, 2000 UT 10 at ¶ 11, 994 P.2d 1243 (merger and aggravated kidnaping); *State v. Couch*, 635 P.2d 89, 92–93 (Utah 1981) (merger and kidnaping), here we are dealing with more specific criminal act: child kidnaping.

■ ¶ 17 Merger is a judicially-crafted doctrine available to protect criminal defendants from being twice punished for committing a single act that may violate more than one criminal statute. *See Finlayson*, 2000 UT 10 at ¶ 19, 994 P.2d 1243; *see also State v. Buggs*, 219 Kan. 203, 547 P.2d 720, 726 (1976). Merger is most commonly applied to situations involving a defendant who has been charged with committing both a violent crime, in which a detention is inherent, and

the crime of kidnaping based solely on the detention necessary to the commission of the companion crime. *See Finlayson*, 2000 UT 10 at ¶ 19, 994 P.2d 1243; *Buggs*, 547 P.2d at 726. When the detention involved is no longer nor larger in scope than necessary to commit the companion crime, courts have determined the detention to be inherent within the companion crime and do not permit double punishment. The reasons underlying this doctrine are perhaps best explained by the Utah Supreme Court in *Couch*, where the court stated:

> [K]idnaping statutes typically do not specify a duration of time *or the circumstances under which the victim must be detained* or how far the victim must be transported for a kidnap to occur[. Thus, a] literal application of such statutes could transform virtually every rape and robbery into a kidnaping as well.

635 P.2d at 92.

¶ 18 As a threshold matter, we must compare the relevant language of our kidnaping and aggravated kidnaping statutes with the relevant language of our child kidnaping statute to determine whether child kidnaping should be subject to a merger analysis.

■ ¶ 19 To convict a defendant of kidnaping the State must prove that the defendant

> intentionally or knowingly and without the authority of law and against the will of the victim:
>
> (a) detain[ed] or restrain[ed] another for any substantial period; or
>
> (b) detain[ed] or restrain[ed] another in circumstances exposing [the victim] to risk of serious bodily injury; or
>
> (c) [held] another in involuntary servitude; or
>
> (d) detain[ed] or restrain[ed] a minor without consent of its parent or guardian.

Utah Code Ann. § 76–5–301 (1999). When a kidnaping occurs under circumstances involv-

---

7. Due to a revision to the child kidnaping statute that occurred after Diaz was convicted, our decision in this case may have very limited application. *Compare* Utah Code Ann. § 76–5–301.1

(1999) (containing a clear statement as to the intent required to violate the statute), *with* Utah Code Ann. § 76–5–301.1 (Supp.2001) (eliminating the earlier expressed statement of intent).

ing a charged companion criminal activity,[8] i.e., aggravated sexual assault, to avoid merger, the State is required to demonstrate that the kidnaping was not "merely incidental or subsidiary to [the companion] crime, but was an independent, separately punishable offense." *Couch,* 635 P.2d 89.

¶ 20 The State successfully demonstrates that a detention was independent if the State can show that the detention occurred under one of the following two conditions: First, that the victim was detained for a period of time "longer than the minimum [amount of time] inherent in the commission of" the companion offense, *id.* at 93; or second, that the detention involved risks to the victim above and beyond the risks inherent in the commission of the companion offense. *See id.* Should the State fail in such an undertaking, the merger doctrine requires that any detention that occurred during the commission of a companion crime be considered incidental to the companion crime.

¶ 21 To prove aggravated kidnaping, the State is required to prove that a defendant,

intentionally or knowingly, without authority of law and against the will of the victim, by any means and in any manner, seiz[ed], confine[d], detain[ed], or transport[ed] the victim:

(a) and in committing, attempting to commit, or in the immediate flight after the attempt or commission of the kidnaping, the actor possesse[d], use[d], or threaten[ed] to use a dangerous weapon as defined in section 76–1–601; or

(b) with intent:

. . . .

(ii) to facilitate the commission, attempted commission, or flight after commission or attempted commission of a felony;

(iii) to inflict bodily injury on or to terrorize the victim or another;

(v) to commit a sexual offense as described in part 4 of this chapter.

Utah Code Ann. § 76–5–302(1)(a), -(b)(ii), -(iii), -(v) (1999).

¶ 22 However, when the State also charges a defendant with committing a companion crime during the same criminal episode, the State is required to prove that the detention which is the subject of the aggravated kidnaping charge was not "merely incidental or subsidiary to [the companion] crime, but was an independent, separately punishable offense." *Couch,* 635 P.2d 89; *see Finlayson,* 2000 UT 10 at ¶¶ 19–23, 994 P.2d 1243. Moreover, due to the broad language of the aggravated kidnaping statute, we have adopted, and the supreme court has accepted, a three-part test that the State must satisfy to avoid merger. *See Finlayson,* 2000 UT 10 at ¶ 23, 994 P.2d 1243; *Finlayson,* 956 P.2d at 289; *see also Buggs,* 547 P.2d at 731. This test requires that

"[i]f the taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnaping the resulting movement or confinement:

(a) Must not be slight, inconsequential and merely incidental to the other crime;

(b) Must not be of the kind inherent in the nature of the other crime; and

(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection."

*Finlayson,* 2000 UT 10 at ¶ 23, 994 P.2d 1243 (quoting *Buggs,* 547 P.2d at 731). Should the State fail to demonstrate any one of these elements, the detention must then be considered incidental to the companion crime, and the detention will merge into the companion crime.

¶ 23 Having examined the relative susceptibility of both the kidnaping and the aggravated kidnaping statutes to the merger analysis, we must now determine whether the statutory language of the child kidnaping statute is subject to the same problems.

¶ 24 To convict a defendant of child kidnaping, the State must prove that a defendant

intentionally or knowingly, without authority of law and against the will of the victim,

---

**8.** We have previously labeled such criminal acts as "host crimes." *See, e.g., State v. Finlayson,* 956

P.2d 283, 289 n. 5 (Utah Ct.App.1998), *aff'd,* 2000 UT 10, 994 P.2d 1243.

by any means and in any manner, seize[d], confine[d], detain[ed], or transport[ed] a child under the age of 14 *with intent to keep or conceal the child from its parent, guardian, or other person having lawful custody or control of the child.*

Utah Code Ann. § 76–5–301.1(1) (1999) (emphasis added). The supreme court has determined that "by any means and in any manner," *id.*, includes any incident wherein a child younger than 14 was "lured away by a deceptive promise and without the consent of the child's parent or guardian." *State v. Strunk,* 846 P.2d 1297, 1300 (Utah 1993).[9] Moreover, the established rule is that a seizure, detention, transportation, or confinement becomes a kidnaping the moment that "the detention begins to be 'against the will of the victim.'" *Couch,* 635 P.2d at 93 (citation omitted). In the context of a child kidnaping,

> [a] seizure, confinement, detention, or transportation is *deemed to be against the will of the victim if the victim is younger than 14 years of age at the time of the offense,* and the seizure, confinement, detention, or transportation is without the effective consent of the victim's custodial parent, guardian, or person acting in loco parentis.

Utah Code Ann. § 76–5–301.1(2) (emphasis added).

¶ 25 After reviewing the then existing statutory language, we conclude that the Legislature narrowly defined the circumstances that constitute a violation of the child kidnaping statute. Under the statute, an actor is guilty of child kidnaping if he seizes, confines, detains, or transports a child *"with intent to keep or conceal the child from its parent, guardian, or other person having lawful custody or control of the child." Id.* § 76–5–301.1(1) (emphasis added). Thus, absent a demonstration of the specific intent to "keep or conceal the child from its parent [or] guardian," a defendant cannot be convicted of child kidnaping. Therefore, the plain language of the statute, requiring a separate and specific mental intent, eliminates any possibility of child kidnaping being merely incidental to a companion criminal act perpetrated at the same time as the child kidnaping. Accordingly, the specific requirements of the then existing child kidnaping statute sufficiently insulated a defendant from being doubly punished for a single act.[10] Therefore, we conclude that the merger doctrine does not apply to child kidnaping as formerly defined by Utah Code Ann. § 76–5–301.1 (1999).

¶ 26 Moreover, were we to subject the present case to a merger analysis, we would conclude that Diaz's kidnaping of J.B. was neither incidental nor subsidiary to the sexual assault. Simply put, moving an eight-year-old girl from the front of a store to a more secluded parking lot around the corner was neither slight, inconsequential, nor merely incidental to the companion crime. There was no need for Diaz to lure J.B. to his car to complete the act of exposing himself. Nor did Diaz need to grab J.B.'s arm

---

9. Defendant argues the present circumstance is analogous to *Finlayson.* We disagree. First, while we note that the supreme court concluded that the defendant's deception in *Finlayson* was insufficient to overbear the will of the victim, *see State v. Finlayson,* 2000 UT 10, ¶ 22, 994 P.2d 1243, we also note the victim in *Finlayson* was an adult who willingly went to the defendant's apartment and socialized with the defendant for nearly one hour prior to being sexually assaulted. *See Finlayson,* 956 P.2d at 290. Second, at no point outside of the commission of the sexual assault did the defendant in *Finlayson* detain the victim against her will. *See id.* In fact, the evidence suggested that the victim willingly got into the defendant's car and allowed him to drive her home. *See id.* We therefore concluded the detention was incidental to the sexual assault. *See id.* Finally, and perhaps most importantly, in *Finlayson* the subject crime was aggravated kidnaping, while here the crime is child kidnaping.

10. The dissent's concern with this outcome is misplaced. Our conclusion is focused only on the specific intent articulated within the former version of our child kidnaping statute. *See* Utah Code Ann. § 76–5–301.1 (1999). This specific intent, "to keep or conceal the child from its parent [or] guardian," deals not with a defendant's intent to commit other crimes in which a detention may be inherent. Rather, the specific intent expressed within the child kidnaping statute clearly addresses a perpetrators intent to detain for a purpose independent of another crime. To be clear, our conclusion in no way impacts the Utah Supreme Court's holding in *Finlayson,* 2000 UT 10, 994 P.2d 1243.

and force her closer to his exposed genitals. Additionally, Diaz's conduct reflects a desire to reduce the risk of detection and to enhance his chance of successfully escaping. Had he committed the act at the storefront, it is safe to assume that someone other than J.B. may have noticed the act and intervened, or possibly pursued Diaz, thereby reducing his chance of escape. Our conclusion is supported by *Buggs*, which articulated the following list of examples concerning the application of the merger doctrine to cases involving the detention of a victim:

> A standstill robbery on the street is not a kidnaping; the forced removal of a victim to a dark alley for robbery is. The removal of a rape victim from room to room within a dwelling solely for the convenience and comfort of the rapist is not a kidnaping; the removal from a public place to a place of seclusion is. The forced direction of a store clerk to cross the store to open a cash register is not a kidnaping; locking him in a cooler to facilitate escape is.

547 P.2d at 731. To this list we would add the non-violent exposure of the genitals to a child while she is sitting at the front of a store is not kidnaping; the luring of the child victim to another location without the permission of the parent of guardian is child kidnaping. Accordingly, we conclude that merger does not apply to Diaz's conviction for child kidnaping. Therefore, his child kidnaping conviction does not merge into his conviction for aggravated sexual abuse of a child.[11]

## II. Sufficiency of the Court's Findings Supporting Diaz's Sentence

■■ ¶ 27 Diaz next argues that the trial court erred in sentencing him to the maximum possible term for child kidnaping without making the findings required under Utah Code Ann. § 76-3-201(6)(a), -(d) (Supp.2001).

We review a trial court's sentencing decisions to determine whether the court exceeded its permitted range of discretion. *See State v. Helms*, 2002 UT 12, ¶ 8, 40 P.3d 626. When deciding between the sentencing options available under any minimum mandatory scheme, a "trial court's discretion in choosing among sentencing possibilities is limited." *State v. Beltran–Felix*, 922 P.2d 30, 36–37 (Utah Ct.App.1996). This limitation is rooted in Utah Code Ann. § 76–3–201, which provides, in relevant part:

> If a statute under which the defendant was convicted mandates that one of three stated minimum terms shall be imposed, the court shall order imposition of the term of middle severity unless there are circumstances in aggravation or mitigation of the crime.
>
> . . . .
>
> (d) The court shall set forth on the record the facts supporting and reasons for imposing the upper or lower term.

Utah Code Ann. § 76–3–201(6)(a).

■ ¶ 28 Prior case law further restricts our ability to imply these findings from the record. *See Labrum*, 925 P.2d at 940; *Beltran–Felix*, 922 P.2d at 37. Thus, a trial court's failure to set forth on the record the aggravating and mitigating factors supporting its departure from the median term amounts to plain error. *See Labrum*, 925 P.2d at 940.

¶ 29 Here, while we agree that the trial court failed to *strictly* comply with the technical requirements of section 76–3–201, we conclude that the trial court entered sufficiently detailed findings to support its decision. During the sentencing hearing, wherein Diaz was being sentenced not only for his conviction in the instant case, but also for separate convictions of child abuse and lewdness with a child, the trial court made the following findings on the record:[12]

---

11. Based on our merger analysis, we conclude that Diaz's subsidiary argument concerning sentencing is meritless. Diaz argues that the trial court erred in asking the State to choose between Diaz's two remaining convictions for the purpose of sentencing. However, based on our conclusion that Diaz's child kidnaping conviction does not merge into his aggravated sexual abuse conviction, it is now clear that the trial court could

have sentenced Diaz for both convictions and its decision to impose sentence for only one conviction is, effectively, a windfall for Diaz. Accordingly, we do not address this issue. *See State v. Carter*, 776 P.2d 886, 888–89 (Utah 1989).

12. The trial court made these findings in support of its decision to sentence Diaz consecutively for his multiple convictions.

There are in this case no mitigating circumstances that I am aware of. The victim in this case was of a tender age and vulnerable, the victim in both cases. This did involve force. It also involved an exposure of his sexual organs under circumstances where force was applied.

And what I am really concerned about, and this is where I am required to think . . . is to look at the person, look at the character of the person. And I am very concerned about the propensities that Mr. Diaz has that would create a situation where he would be a danger if he were out.

I believe that he is a danger for a couple of reasons. One is his long and sustained history which do[es] contain offenses or an offense dealing with sexual abuse and do[es] contain multiple offenses dealing with force. Here we have two sexual offenses that the jury has found him guilty of. And I just don't think that he has any control over himself. I even looked back at his statement that he has always served his, his time in prison rather than accept probation. He hasn't sought any type of help for his problems, he hasn't admitted his problems . . . he has no sympathy for anybody besides himself. And I think he is a danger to people because of his violent offenses, because there have been sexual offenses in the past, . . . even [one where] there's weapons. His record is over two decades. And he has this very deep seated sexual problem which involves children and that's very important to me. And he's doing nothing to deal with those problems. He hasn't even taken the first step.

¶ 30 The statute requires the court to set forth, on the record, aggravating and mitigating factors supporting the departure from the median term, factors that the trial court has clearly addressed here. We see no reason to require a second, mechanistic recitation of the same reasons and thinking processes of the trial judge.

¶ 31 The trial court's explanation for the imposition of consecutive sentences clearly supports its decision to impose the maximum possible term. First, the trial court found *no* mitigating factors to warrant leniency. Second, the court set forth a detailed record of the aggravating factors it found concerning Diaz's conduct and character, any one of which was sufficient to justify the imposition of the maximum possible term for his child kidnaping conviction. Accordingly, we conclude that the trial court adequately addressed the mitigating and aggravating factors necessary to support its sentencing decision.

### III. Sufficiency of the Evidence

¶ 32 Diaz also argues that the State's evidence was insufficient to support his convictions for child kidnaping and aggravated sexual abuse of a child.[13] Generally, absent a demonstration of plain error or exceptional circumstances, we will not address a claim raised for the first time on appeal. *See Holgate*, 2000 UT 74 at ¶ 11, 10 P.3d 346. To demonstrate that plain error occurred in the context of a challenge to the sufficiency of the evidence, an appellant must show "first that the evidence was insufficient to support a conviction of the crime[s] charged and second that the insufficiency was so obvious and fundamental that the trial court erred in submitting the case to the jury." *Id.* at ¶ 17.

¶ 33 We first examine the record to determine whether, "after viewing the evidence and all inferences drawn therefrom in a light most favorable to the jury's verdict, the evidence 'is sufficiently inconclusive or inherently improbable such that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime[s] for which he or she was convicted.'" *Id.* at ¶ 18 (quoting *State v. Dunn*, 850 P.2d 1201, 1212 (Utah 1993)). Only then will we undertake an examination of the record to determine "whether the evidentiary defect was so obvious and fundamental that it was plain error to submit the case to the jury." *Id.*

---

13. Because Diaz was not sentenced for his aggravated sexual abuse of a child conviction, and because we have concluded that his child kidnaping conviction does not merge into his aggravated sexual abuse conviction, we examine only the sufficiency of the evidence supporting his child kidnaping conviction.

¶ 34 In this case, upon reviewing the record, we conclude that the evidence was not "sufficiently inconclusive" to support Diaz's claim, nor is it "inherently improbable" that reasonable minds could have agreed to convict Diaz based on the evidence presented.

¶ 35 To prove child kidnaping in this instance, the State was required to present evidence showing that Diaz, intentionally or knowingly, without authority of law, seized, confined, detained, or transported J.B. absent the consent of her parent or guardian and with the intent to keep or conceal her from her parent or guardian. *See* Utah Code Ann. § 76–5–301.1(2). The State presented the following evidence:

(1) J.B. was an eight-year-old girl whose mother expected her to remain at the front of the Wal–Mart while the mother completed her shopping.

(2) While attempting to give away some kittens, J.B. was approached by a man who asked her to carry one of the kittens to his car although he was unencumbered and did not appear to need the help.

(3) J.B. picked up a kitten and followed the man around the corner of the Wal–Mart, away from the front doors and away from the location where J.B.'s mother had left her, and where J.B.'s mother expected to find J.B. upon her return.

(4) J.B. identified Diaz as the man who had lured her away from the store front.

(5) The only plausible reason for Diaz to lure J.B. away from the store front was to conceal J.B. from her parents for a period of time.

¶ 36 From this evidence, and the reasonable inferences that result from examining the evidence, we see nothing to suggest that " 'reasonable minds must have entertained a reasonable doubt that [Diaz] committed the crime.' " *Holgate*, 2000 UT 74 at ¶ 18, 10 P.3d 346 (citation omitted); *see also Strunk*, 846 P.2d at 1300 (stating "[c]learly [the crime of child kidnaping] can be committed without any bodily injury to the victim, such as where the victim is lured away by a deceptive promise and without the consent of the child's

parents"). We therefore conclude that the evidence was sufficient to convict Diaz of child kidnaping.

IV. Ineffective Assistance of Counsel [14]

¶ 37 Diaz's final substantive argument alleges that his trial counsel's performance was deficient in at least six specific instances, any one of which, he claims, was sufficient to alter the outcome of his trial.

¶ 38 To show that his trial counsel was ineffective, Diaz must show " ' "first, that his counsel rendered a deficient performance in some demonstrable manner, which performance fell below an objective standard of reasonable judgment and, second, that counsel's performance prejudiced the defendant." ' " *State v. Kelley*, 2000 UT 41, ¶ 25, 1 P.3d 546 (quoting *Parsons v. Barnes*, 871 P.2d 516, 521 (Utah 1994) (citation omitted)). Failure to satisfy either prong will result in our concluding that counsel's behavior was not ineffective. *See State v. Price*, 909 P.2d 256, 264 (Utah Ct.App.1995).

¶ 39 In examining trial counsel's performance, "[w]e 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that under the circumstances, the challenged action "might be considered sound trial strategy." ' " *State v. Mecham*, 2000 UT App 247, ¶ 22, 9 P.3d 777 (quoting *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984) (citation omitted)). "To establish prejudice, defendant must show ' "a reasonable probability ... that except for ineffective counsel, the result would have been different." ' " *Id.* (quoting *State v. Verde*, 770 P.2d 116, 118 (Utah 1989) (citation omitted)). Finally, we note that trial counsel's "[f]ailure to raise futile objections does not constitute ineffective assistance of counsel." *Kelley*, 2000 UT 41 at ¶ 26, 1 P.3d 546.

¶ 40 In the instant case, our conclusion that Diaz was properly convicted for child kidnaping and permissibly sentenced to the maximum possible prison term forecloses

---

**14.** Diaz was provided with, and objected to, a number of appointed attorneys prior to trial.

The issues raise in this appeal, however, focus only on the representation of his trial counsel.

Diaz's arguments regarding his trial counsel's performance pertaining to these issues. *See id.* We take Diaz's remaining claims in turn.

¶ 41 Diaz argues that he was prejudiced by his trial counsel's failure to seek suppression of the results of the pretrial photo array process. So long as the photo array process used by the police does not " 'give rise to a very substantial likelihood of irreparable misidentification,' " *State v. Lopez*, 886 P.2d 1105, 1111 (Utah 1994) (quoting *State v. Thamer*, 777 P.2d 432, 435 (Utah 1989)), the pretrial photo array is proper. We will conclude that this " 'very substantial likelihood' " exists only if we determine that Diaz's photo was emphasized over the others in the array. *Id.* We make this determination by looking first at the photo array itself, and then at the actions of the police officers during the presentation of the photo array. *See id.* at 1111–12.

¶ 42 Here, Diaz's photo was one of eight similar photos included within the array. Like each of the other photos, Diaz's photo was small, black and white, and of low quality. Furthermore, each of the photos depicted either an Hispanic or Native American male with no facial hair, no visible tattoos or jewelry, and similar hair cuts. Finally, Diaz's photo was positioned fifth, placing it in the middle of the array, and on the second row. Nothing in the photo array itself supports Diaz's claim that the array was impermissibly suggestive.

¶ 43 We next examine the record concerning the circumstances surrounding the photo array procedure. First, all of the photos included in the array generally comported with J.B.'s description of her attacker. Second, Diaz's photo was neither the first nor the last photo presented in the array, and was of the same size, quality, and type as each of the other photos. Finally, contrary to Diaz's argument on appeal, the officers conducting the photo array did not suggest

that a photo of J.B.'s attacker was included in the array. Rather, they told J.B. that if she should see a photo of her attacker in the array, she should point that photo out to them.

¶ 44 Accordingly, the photo array procedure did not " 'give rise to a very substantial likelihood of irreparable misidentification.' " *Id.* at 1111 (citation omitted). We therefore conclude that any attempt by Diaz's trial counsel to suppress the photo array would not have succeeded. Diaz's argument is thus without merit.[15]

¶ 45 Diaz next argues that his trial counsel's failure to submit a more complete jury instruction concerning the limitations of eyewitness testimony was fatal to his cause. "[U]nless obvious tactical reasons exist to forego an [eyewitness] instruction, trial counsel faced with ... eyewitnesses who ... all identify his client as the perpetrator, should request a cautionary eyewitness instruction. Such an instruction would ... apprise the jury of the inherent limitations in eyewitness identification." *State v. Maestas*, 1999 UT 32, ¶ 28, 984 P.2d 376; *see also State v. Long*, 721 P.2d 483, 492–94 (Utah 1986). Such an instruction should be crafted to assist the jury in evaluating the ultimate question concerning the identification, "whether, under the totality of the circumstances, the identification was reliable." *State v. Ramirez*, 817 P.2d 774, 781 (Utah 1991).

¶ 46 To this end, the supreme court in *Long* articulated several factors through which a jury may filter the testimony to determine reliability:

(1) [T]he opportunity of the witness to view the actor during the event; (2) the witness's degree of attention to the actor at the time of the event; (3) the witness's capacity to observe the event, including his or her physical and mental acuity; (4) whether the witness's identification was spontaneously made and remained consistent thereafter, or whether it was the

---

15. The record also suggests that trial counsel had an alternative tactical basis for not moving to suppress the photo array identification. J.B. was slated to testify and would likely identify Diaz in court; therefore, suppression of the array identification would have been of minimal value. Instead, trial counsel attempted to use the photo array process to impeach the investigating officer's testimony during trial. The mere fact that counsel was unsuccessful is not indicative of ineffective assistance. *See State v. Pursifell*, 746 P.2d 270, 275 (Utah Ct.App.1987).

product of suggestion; and (5) the nature of the event being observed and the likelihood that the witness would perceive, remember and relate it correctly.

*Long,* 721 P.2d at 493. *Long* also offers two model jury instructions that focus on these factors; however, the court left the actual crafting of specific jury instructions to the trial court and trial counsel. *See id.* at 492, 493 n. 7, 494 n. 8.

¶ 47 In the present case, Diaz's trial counsel submitted, and the trial court used, the following jury instruction concerning the limitations of eyewitness testimony:

When weighing eyewitness testimony you may consider (1) the opportunity of the witness to view the defendant during the event; (2) the witness's degree of attention to the defendant at the time of the event; (3) the witness's capacity to observe the event, including his or her physical and mental acuity; (4) whether the witness's identification was made spontaneously and remained consistent thereafter, or whether it was the product of suggestion; and (5) the nature of the event being observed and the likelihood that the witness would perceive, remember and relate it correctly.

While we agree that this instruction is not a model of clarity, when coupled with trial counsel's consistent effort to challenge J.B.'s identification of Diaz, we conclude that the instruction satisfactorily addressed the concerns highlighted by the supreme court in *Long.* Therefore, we conclude Diaz was not prejudiced by trial counsel's choice of jury instruction.

¶ 48 Diaz next argues he was prejudiced by trial counsel's failure to attempt to suppress remarks Diaz made during a police interrogation. The thrust of his argument is that any statement he may have made to the police was the product of coercion. We disagree.

¶ 49 First, "we have [long] recognized that there is a strong presumption that counsel acted competently," *State v. Snyder,* 860 P.2d 351, 359 (Utah Ct.App.1993), and absent a showing that there was "no conceivable legitimate tactical basis for counsel's" actions, *id.,* we will not find that counsel performed ineffectively. Here, the record shows that trial counsel ably used the content of the interview/interrogation to undermine the State's argument, to impeach the testimony of the investigating officers, and to challenge the prosecutor's arguments made during his opening and closing statements. *See, e.g., Mecham,* 2000 UT App 247 at ¶ 23, 9 P.3d 777. Counsel's lack of success is insufficient to support Diaz's contention. *See State v. Pursifell,* 746 P.2d 270, 275 (Utah Ct.App. 1987) (stating " 'an unfavorable result does not compel a conclusion of ineffective assistance of counsel' " (citation omitted)).

¶ 50 Second, Diaz alleges that he was misled and tricked into making statements as a result of police misconduct.

[W]e have recognized that " '[a] defendant's will is not overborne simply because he is led to believe that the government's knowledge of his guilt is greater than it actually is.' " *State v. Galli,* 967 P.2d 930, 936 (Utah 1998) (quoting *Ledbetter v. Edwards,* 35 F.3d 1062, 1070 (6th Cir.1994)). However, in certain cases, police misrepresentations may be sufficiently egregious to overcome a defendant's will so as to render a confession involuntary.

*State v. Rettenberger,* 1999 UT 80,¶ 20, 984 P.2d 1009. In the present case, there is no question that during the interview process the police overstated the strength of the evidence against Diaz. However, unlike the defendant in *Rettenberger,* Diaz was not new to the criminal justice system and Diaz *did not confess to a crime. See id.* at ¶¶ 2–3. Nor does Diaz suffer from the variety of mental illnesses or the reduced intellectual capacity of the *Rettenberger* defendant. *See id.* at ¶¶ 6, 37–39. Moreover, in this case, the misrepresentations made by police officers to Diaz are best described as half-truths, rather than the "complete fabrications" at issue in *Rettenberger. Id.* at ¶ 21. Diaz has failed to demonstrate that the officer exploited his "disabilities and deficiencies in such a way that his 'will was overborne.' " *Id.* at ¶ 19 (citation omitted). We therefore conclude that Diaz's trial counsel was not required to engage in a futile attempt to suppress his statement.

¶ 51 Diaz's final ineffective assistance argument centers on his trial counsel's failure to object to certain statements made by the prosecutor.[16] To evaluate Diaz's final complaint, we must determine whether "(1) the argument [or comment was] directed toward matters the jury would not be justified in considering, and (2) ... the error [was] substantial and prejudicial such that in its absence there is a reasonable likelihood of a more favorable result for the defendant...." *State v. Baker*, 963 P.2d 801, 804 (Utah Ct. App.1998). We view the questioned statements in the context of the entire trial. *See id.* Finally, we note that

> "[i]n summing up a case before a jury, counsel may not introduce or comment on facts outside the evidence, but reasonable inferences may be drawn from the evidence and considerable latitude is allowed in discussing it. Counsel may appeal to the jury with all the power and persuasiveness his learning, skill and experience enable him to use."

*State v. Zamora*, 247 Kan. 684, 803 P.2d 568, 571 (1990) (citation omitted).

¶ 52 Diaz argues that the following statement, made by the prosecuting attorney during his closing argument, appealed to the passions and prejudices of the jurors:

> Now I have four daughters and one son. It's pretty darn likely I am going to have a passel of grandkids. So I have collected as many silver dollars as I could. Each one of them represents a hope or a dream that I hope to share with my grandchildren. It's a dream for my posterity. And I lock these silver pieces up to protect them from the world[,] from theft, I put them in a velvet bag to protect them from being tarnished. I put them away in a secret place. And treating them well, I hope to keep them shiny and bright and safe. But children are not like silver dollars. You can't lock them up. You can't put them in a metal box. You can't stuff them into a velvet soft bag and put them on a shelf and

lock the door. That's not how you protect children. If we were to do that, no children, no child would ever grow up feeling loved and feeling nourished, independent, being able to participate in our community. No, we protect children in different ways. We protect them as best we can as parents. And we protect them in our community with laws, laws against aggravated sexual abuse of a child. Laws against child kidnaping. Laws against aggravated kidnaping. These laws protect only when we put them to use as we are here today to do. And it will be your decision how we protect [J.B.]. Thank you.

¶ 53 We have examined the statements in context and conclude that there is no "reasonable likelihood," *Baker*, 963 P.2d at 804, that the statements altered the outcome of Diaz's trial. While portions of the prosecutor's closing argument may have been dramatic, we do not agree with Diaz that the statements were a "flagrant appeal to the passions and prejudices of the jury." Rather, we conclude that the prosecutor was simply using his argument to impress upon the jury the gravity of the circumstances and the importance of their duty. Therefore, in the absence of the possibility of a different outcome, Diaz's last ineffective assistance argument fails.

¶ 54 Accordingly, we conclude that Diaz's trial counsel was not ineffective.

## V. Cumulative Error

¶ 55 Diaz's final argument on appeal is that his conviction should be reversed due to the cumulative errors that occurred during his trial. "Under the cumulative error doctrine, we will reverse a conviction only if 'the cumulative effect of the several errors undermines our confidence ... that a fair trial was had.'" *State v. Medina–Juarez*, 2001 UT 79,¶ 27, 34 P.3d 187 (quoting *State v. Kohl*, 2000 UT 35,¶ 25, 999 P.2d 7 (citations omitted)). However, because Diaz has failed to demon-

---

**16.** Diaz's argument mentions statements made by the prosecutor during both the opening and closing argument. However, because Diaz failed to proffer any case law or any substantive argument concerning the prosecutor's opening statement, we address only that portion of his claim dealing with the prosecutor's closing argument. *See State v. Parra*, 972 P.2d 924, 926 (Utah Ct. App.1998) (stating "[i]t is well established that a reviewing court will not address arguments that are not adequately briefed").

strate that errors were committed during his trial, the doctrine of cumulative error is inapplicable.

## CONCLUSION

¶ 56 We conclude that the crime of child kidnaping, as described in Utah Code Ann. § 76-5-301.1 (1999), is not subject to being merged into the crime of aggravated sexual abuse of a child. We further conclude that the trial court adequately supported its decision to sentence Diaz to the maximum term allowable for his conviction of child kidnaping. Moreover, Diaz's conviction was supported by sufficient evidence and his trial counsel provided Diaz with effective assistance. Finally, because we have determined that no substantive error occurred during Diaz's trial, we conclude that the doctrine of cumulative error is inapplicable.

¶ 57 Accordingly, we affirm Diaz's conviction for child kidnaping, and his sentence of fifteen years to life.

¶ 58 I CONCUR: PAMELA T. GREENWOOD, Judge.

DAVIS, Judge (concurring and dissenting):

¶ 59 I concur with the majority respecting Parts II, III, and IV, and concur and dissent with respect to Parts I and V.

¶ 60 At the outset, I am concerned that the majority does not address the effect of the events leading to the result on appeal.[1] First, the jury was instructed to reach a verdict on both aggravated kidnaping and child kidnaping, although charged in the alternative, and, accordingly, returned a verdict inconsistent with the charges. Second, the judge imposed sentence on the aggravated kidnaping and aggravated sexual abuse of a child charges but later entered judgment on child kidnaping after determining that aggravated kidnaping merged with aggravated sexual abuse of a child. Finally, the record does not reflect the disposition of the host crime of aggravated sexual abuse of a child.

¶ 61 Diaz was charged in a two count information. In count one, he was charged with aggravated kidnaping or, in the alternative, child kidnaping. In count two, he was charged with aggravated sexual abuse of a child.

¶ 62 The proposed jury instructions provided that the aggravated kidnaping and child kidnaping charges should be considered in the alternative. However, the version submitted to the jury erroneously instructed them that a verdict was to be returned upon both the aggravated kidnaping and child kidnaping charges. Thus, the jury returned a guilty verdict on all three charges—aggravated kidnaping, child kidnaping, and aggravated sexual abuse of a child. After the verdict, defense counsel requested clarification upon which of the two, alternatively charged offenses in count one Diaz would be sentenced. The judge accepted the State's recommendation that sentence be imposed on the aggravated kidnaping count, rather than child kidnaping.

¶ 63 On February 2, 1999, the trial court imposed sentence for the aggravated kidnaping and aggravated sexual abuse charges. At that time, sentencing was continued for consideration of an enhancement. A judgment and order of commitment was prepared to reflect the sentencing for aggravated kidnaping and aggravated sexual abuse of a child. However, the trial judge did not sign the order because he was concerned about the application of the merger doctrine. The court submitted to counsel a copy of *State v. Finlayson*, 956 P.2d 283 (Utah Ct.App.1998), *aff'd in part*, 2000 UT 10, 994 P.2d 1243, and each side prepared briefs addressing the merger issue. Prior to the sentencing hearing, the State filed a motion for a change of judge based upon the court's election to place the aggravated kidnaping and child kidnaping charges before the jury and that the judge "created the circumstances that might possibly allow application of the merger doctrine under the reading most beneficial to defendant." The affidavit in support of the motion was determined not to be sufficient

---

1. Diaz challenges the March 25, 1999 sentencing hearing, the merger analysis, and his sentence, specifically the prosecutor's post-merger role in

-deciding upon which crime Diaz would be sentenced and the related decision not to sentence on aggravated sexual abuse of a child.

for recusal by another judge who ruled that a new judge would be "faced with the same quandary" in relation to merger and that no bias existed.

¶ 64 At continued sentencing on March 25, 1999, the court determined that aggravated kidnaping merged into aggravated sexual abuse of a child. Apparently resurrecting the child kidnaping verdict, the court again asked the State to elect the charges upon which Diaz would be sentenced—aggravated sexual abuse of a child or child kidnaping "which has a minimum mandatory."

¶ 65 The State elected the child kidnaping charge and on May 8, 1999, the trial court executed a judgment and order of commitment that sentenced Diaz to only the child kidnaping count. The record does not indicate what, if anything, happened to the aggravated sexual abuse of a child verdict into which the aggravated kidnaping verdict merged.

¶ 66 The jury convicted Diaz on the two kidnaping charges, although they were charged in the alternative. If a trial judge is encountered with an inconsistent jury verdict and sentence is imposed on only one charge, there is no reversible error or lack of due process. *See State v. Logan,* 712 P.2d 262, 264 (Utah 1985). In *Logan,* the Utah Supreme Court held that a defect caused by an inconsistent verdict becomes "cured when the trial judge enters judgment or imposes sentence upon only one charge or count." *Id.* Here, the inconsistent jury verdict was arguably addressed when the trial judge entered the judgment on the child kidnaping charge.[2]

¶ 67 "[T]he law is well settled in the state that the statements made by a trial judge are not the judgment of the case and it is only the signed judgment that prevails." *State v. Gerrard,* 584 P.2d 885, 887 (Utah 1978); *see also McCollum v. Clothier,* 121 Utah 311, 241 P.2d 468, 472 (Utah 1952) (stating that judgment cannot be overturned because trial court changed its mind and entered judgment contrary to orally announced decision and that the only judgment given effect is the one entered in accordance with law); *Trembly v. Mrs. Fields Cookies,* 884 P.2d 1306, 1311 (Utah Ct.App.1994) (noting "a judge is free to change a ruling until a final decision is formally rendered"). Thus, the trial court is not bound by its "pre-merger" imposition of sentence.

¶ 68 I am also concerned about the disposition of the host crime. By sentencing Diaz only upon the child kidnaping charge and not the host crime of aggravated sexual abuse of a child, the secondary child kidnaping offense has become the primary charge which carries the heaviest penalty. Assuming the offense of child kidnaping is subject to merger, the very purpose of the merger doctrine could be thwarted by the simple expedient of, in effect, eliminating the host crime. The purpose of merger was to prevent adding charges to the host crime merely to obtain a " 'significantly heavier sentence than if only the host crime had been charged.' " *Finlayson,* 956 P.2d at 289 n. 5 (quoting *State v. Couch,* 635 P.2d 89, 92 (Utah 1981)).

¶ 69 The merger doctrine is further emasculated by what I believe is the majority's incorrect assertion that an offense with a specific intent element "eliminates any possibility of [that offense] being merely incidental to a [host] criminal act," *ante* at ¶ 25, and, thus, not subject to merger. Aggravated kidnaping, which was determined to be merged into aggravated sexual abuse of a child by the trial court, can be a specific intent crime. *See* Utah Code Ann. § 76–5–302 (Supp.2001); *see also* Utah Code Ann. § 76–5–303 (Supp.2001) (requiring specific intent for custodial interference). In fact, in *Finlayson,* the underlying aggravated kidnaping was a specific intent crime because the elements of the offense included "the intent . . . to facilitate the commission of the rape and forcible sodomy." *State v. Finlayson,* 2000 UT 10, ¶ 14, 994 P.2d 1243; *see also Braggs v. State,* 789 So.2d 1151, 1153 (Fla. Dist.Ct.App.2001) (reversing kidnaping conviction with specific intent element because acts were incidental to and part of the underlying felony); *State v. Kemp,* 46 P.3d 31, 33–

2. Because I believe both kidnaping charges merged into the host crime, I do not here address the propriety of dealing with an inconsistent verdict where the inconsistency was arguably eliminated as a matter of law.

35 (Kan.Ct.App.2002) (same). It is both illogical and inconsistent with our merger jurisprudence that a specific intent crime cannot be the subject of merger, including child kidnaping.[3] If the requirement of a "separate and specific mental intent," *ante* at ¶ 25, eliminates the possibility of merger, the doctrine will have little efficacy.

¶ 70 Finally, in this case, I believe that child kidnaping merges into aggravated sexual abuse of a child. The majority relies on the specific intent element to child kidnaping of "inten[ding] to keep or conceal the child from its parent, guardian, or other person having lawful custody or control of the child" to determine that the detention of the victim was not merely incidental to the aggravated sexual abuse. Utah Code Ann. § 76–5–301.1 (1999). This conclusion is not only legally incorrect, but inconsistent with the facts of this case.

¶ 71 Unlike lesser included offense analysis conducted under Utah Code Ann. § 76–1–402 (1999), merger analysis is more fact intensive. *See State v. Lopez,* 2001 UT App 123, ¶ 14 n. 4, 24 P.3d 993 (noting "factual scenarios constituting the commission of the host crime" will vary widely, so "whether movement and confinement are inherent in the host crime will almost always involve factual inquiry").

¶ 72 Under the facts of this case, there is no evidence in the record that demonstrates that Diaz was even aware that the mother was present in the vicinity when he induced the child to his car or that the mother was aware of the location of the child. In fact, the victim was standing alone in front of the store while the mother was somewhere inside the store at the time the victim was approached by Diaz. Accordingly, the fact that Diaz requested the child, who appeared to be alone, to escort him to his car with the kitten and then detained the victim while committing the sexual abuse suggests that the inducement to go to the vehicle was merely incidental to the host crime. *See Finlayson,* 2000 UT 10 at ¶ 23, 994 P.2d 1243 (carrying the victim to a bedroom and handcuffing her

was a "slight, inconsequential" detention merely incidental to other crimes). Furthermore, Diaz luring the victim to his car for the purpose of committing the aggravated sexual abuse was inherent in the nature of the sexual offense since Diaz would not have engaged in the criminal act in front of the store, in plain view of customers, where the child was initially located. *See id.* Finally, the child kidnaping was not independently significant of the sexual abuse since the sexual conduct could only be achieved through inducing the child to his car and then momentarily detaining her while engaging in the sexual abuse. *See id.* Therefore, according to the facts of this case, the very intent relied upon by the majority is not supported, and child kidnaping would merge into aggravated sexual abuse of a child.

¶ 73 I would remand for sentencing upon the aggravated sexual abuse of a child conviction.

---

**3.** The specific intent element has since been removed from the statute. *See* Utah Code Ann.

