**2014 UT App 236**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff, Appellee, and Cross-appellant,
*v.*
PANKAJKARAN SINGH KATARIA,
Defendant, Appellant, and Cross-appellee.

Opinion
No. 20120734-CA
Filed October 2, 2014

Fourth District Court, Provo Department
The Honorable Darold J. McDade
No. 081403466

Jennifer K. Gowans Vandenberg, Attorney
for Appellant and Cross-appellee

Sean D. Reyes and John J. Nielsen, Attorneys for
Appellee and Cross-appellant

JUDGE JAMES Z. DAVIS authored the lead Opinion, in which
JUDGES J. FREDERIC VOROS JR. and JOHN A. PEARCE concurred in
part. JUDGE J. FREDERIC VOROS JR. authored a separate opinion in
which JUDGE JOHN A. PEARCE concurred.[1]

DAVIS, Judge:

¶1      Pankajkaran Singh Kataria seeks reversal of his convictions
for aggravated domestic assault, a second degree felony, and

---

1. Parts I and II of the lead opinion represent the majority opinion.
Part III of the lead opinion, addressing the State's cross appeal of
the trial court's merger ruling, reflects the dissenting opinion of
Judge Davis. *See infra* ¶¶ 23–28. Judge Voros's separate opinion
represents the majority decision on the merger issue. *See infra*
¶¶ 30–35.

criminal mischief domestic violence, a class B misdemeanor. *See generally* Utah Code Ann. § 76-5-103 (LexisNexis 2012); *id.* § 76-6-106(2)(c), (3)(b)(iv). The State cross appeals, challenging the trial court's decision to merge the aggravated kidnapping charge into the aggravated assault charge. *See id.* § 76-5-302 (Supp. 2013). We affirm in part and reverse in part.

BACKGROUND

¶2     We recite the facts in a light most favorable to the jury's verdict. *State v. Hutchings*, 2012 UT 50, ¶ 26, 285 P.3d 1183. Kataria's convictions arise out of a single domestic dispute with his then-girlfriend (Victim) that resulted in Victim's sustaining a multitude of injuries to her face, a crush injury to her right hand, extensive bruising, a dislocated toe, multiple fractures of her right foot, a broken nose, and bleeding in or near her brain. During this dispute, Kataria had also wrested Victim's cell phone from her, twice ordered her into the bathroom to shower blood off of her body, and stopped her from leaving the room to get a towel. Kataria did not dispute that he assaulted Victim; instead, he argued that he was not capable of forming the requisite mental state to support the charges against him due to his level of intoxication. The jury convicted Kataria of all charges, including the aggravated kidnapping charge that the trial court subsequently merged into the aggravated domestic assault charge.

ISSUES AND STANDARDS OF REVIEW

¶3     Kataria appeals his convictions, arguing that his trial counsel was ineffective for failing to thoroughly investigate his voluntary intoxication defense, for failing to object to what Kataria characterizes as the prosecutor's presentation of false evidence, and for failing to move to exclude inherently prejudicial photographs from being admitted into evidence. Ineffective assistance of counsel claims raised for the first time on appeal present questions of law. *State v. Ott*, 2010 UT 1, ¶ 16, 247 P.3d 344.

¶4    Kataria also argues that the trial court abused its discretion in admitting into evidence certain photographs to which trial counsel timely objected on the grounds that they were cumulative and gruesome. "A trial court's determination that photographs are relevant is reviewed for abuse of discretion. Whether a photograph is gruesome is a question of law, which we review for correctness." *State v. Gulbransen*, 2005 UT 7, ¶ 35, 106 P.3d 734 (citations and internal quotation marks omitted).

¶5    On cross appeal, the State contends that the trial court erred by merging the aggravated kidnapping charge into the aggravated domestic assault charge. "Merger issues present questions of law, which we review for correctness." *State v. Diaz*, 2002 UT App 288, ¶ 10, 55 P.3d 1131 (citing *State v. Finlayson,* 2000 UT 10, ¶ 6, 994 P.2d 1243).

ANALYSIS

I. Ineffective Assistance of Counsel

A.    Voluntary Intoxication Defense

¶6    We first address Kataria's assertion that his attorneys were ineffective in their preparation and presentation of his voluntary intoxication defense. Voluntary intoxication is a defense to specific intent offenses if "such intoxication negates the existence of the mental state which is an element of the offense," except where the mental state element is "recklessness or criminal negligence." Utah Code Ann. § 76-2-306 (LexisNexis 2012); *see also Adams v. State,* 2005 UT 62, ¶ 22, 123 P.3d 400.

¶7    "To prove ineffective assistance of counsel, [a] defendant must show: (1) that counsel's performance was objectively deficient and (2) a reasonable probability exists that but for the deficient conduct [the] defendant would have obtained a more favorable outcome at trial." *Ott*, 2010 UT 1, ¶ 22 (citation and internal quotation marks omitted). To satisfy the deficient performance prong of the ineffective assistance test, "a defendant must identify

the acts or omissions which, under the circumstances, show that counsel's representation fell below an objective standard of reasonableness" and overcome the reviewing court's presumption that "the challenged action might be considered sound trial strategy." *State v. Templin*, 805 P.2d 182, 186 (Utah 1990) (footnote, citations, and internal quotation marks omitted). "The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). An ineffective assistance claim cannot succeed unless both required showings are made, and a court may conclude its inquiry if it determines that the defendant has failed to meet his burden on either prong. *Id.* at 697.

¶8 Kataria asserts that despite evidence in the record supporting an intoxication defense, including Victim's preliminary hearing testimony that Kataria was "very drunk" when the assault occurred, his trial counsel "claimed they learned for the first time on the eve of trial that he was highly intoxicated." This argument is somewhat disingenuous; what trial counsel "learned for the first time on the eve of trial" was not that there was alcohol involved at the time of the assault, but that Victim had specifically identified the amount Kataria had consumed as half a gallon of whiskey in a victim impact statement (the VIS) that was not given to the defense until the day before trial. Trial counsel acknowledged to the court that "there has been testimony and evidence all along that some alcohol was involved" but maintained that they did not believe that the evidence was sufficient to support an intoxication defense until they discovered the statement in the VIS.

¶9 Regardless of whether Kataria's trial counsel should have or could have discovered this information sooner or whether their preparation was rushed, trial counsel nonetheless presented sufficient evidence to entitle Kataria to a jury instruction for voluntary intoxication. The evidence trial counsel presented to the jury included testimony indicating that both Kataria and Victim had been drinking that night, that Victim may have indicated at some point in time that she believed Kataria could have consumed up to half a bottle or half a gallon of whiskey, that Kataria's verbal

and physical assaults were out of character, and that Kataria drank so much he could not remember what he had done.

¶10    Kataria also asserts that his trial counsel performed deficiently by failing to impeach Victim's trial testimony that Kataria was not drunk with her preliminary hearing testimony in which she described Kataria as "very drunk" that evening. While trial counsel did not impeach Victim with this particular statement from her preliminary hearing testimony, their cross-examination of Victim nonetheless effectively challenged the quality of her memory and her understanding of what being "very drunk" entails. Additionally, counsel did elicit testimony from Victim that Kataria was not acting like himself, that she assumed he had been drinking a lot that day, and that she had speculated in her VIS that the amount he had consumed may have been as much as half of a gallon, which was bolstered by evidence of her statement to a 911 dispatcher that Kataria was drunk. Counsel further impeached Victim by questioning the accuracy of her memory with inconsistent statements she had made about her jealousy of other women Kataria had been contacting at the time.

¶11    Kataria last points to his trial counsel's attempts to cross-examine two of the State's witnesses about the effects of heavy drinking as further evidence of their deficient preparation and presentation of "Kataria's only defense." Trial counsel attempted to elicit testimony during their cross-examination of one of the responding police officers regarding what sort of alcohol-related training the officer had received and to have the officer elaborate as to why investigating alcohol use in domestic violence calls was important. The State objected to this questioning, which objection the court sustained. Trial counsel, however, still managed to elicit testimony from the officer that "the Defendant had used alcohol" that night and that alcohol "can impair what a person does and things that they say." Similarly, trial counsel attempted to elicit testimony from a second witness, also a responding police officer, as to the general effects alcohol may have on an individual in light of the officer's "several hours of DUI training." The failure to elicit the desired testimony from the second police witness was, at best, of minimal impact where the general effects of alcohol intoxication

were described at various points throughout the trial, including during the first officer's testimony that alcohol "can impair what a person does and things that they say"; during Victim's testimony associating being drunk with slurring words, staggering, and falling down stairs; and in questions by both the prosecutor and defense counsel that implied that alcohol has both a relaxing effect and an impairing effect on one's capacity "to go about [his] day" without, e.g., misplacing items, burning himself while cooking, passing out, or getting sick. Indeed, many courts, including our supreme court, consider the general effect of alcohol intoxication to be a matter of common knowledge of which courts may take judicial notice. *See, e.g., Dixon v. Stewart*, 658 P.2d 591, 597 (Utah 1982) ("[I]t is generally held that expert testimony is not required in the case of intoxication with alcohol . . . ."); *DeFusion Co. v. Utah Liquor Control Comm'n*, 613 P.2d 1120, 1124 (Utah 1980) (recognizing "that courts uniformly take judicial notice of the intoxicating nature of alcohol"); 29 Am. Jur. 2d *Evidence* § 106 ("The nature of alcoholic beverages is a matter of common knowledge. A judge may judicially notice well known, undisputed facts about the effect of alcohol . . . ." (citing *Lanham v. Coombe,* 650 N.Y.S.2d 44, 45 (N.Y. App. Div. 1996); *Poulnot v. District of Columbia*, 608 A.2d 134, 142 (D.C. 1992))).

¶12    Accordingly, we agree with the State that Kataria's trial counsel "adequately investigated and implicitly accomplished what [Kataria] now claims [they] should have explicitly done," and therefore, Kataria has failed to demonstrate deficient performance. As a result, this ineffective assistance of counsel claim fails.

B.    Prosecutorial Misconduct

¶13    Kataria next argues that the State "intentionally solicited false testimony from [Victim] that [Kataria] was not intoxicated" and then reiterated this "false testimony" during closing argument to emphasize its position that although Kataria may have been drinking, he was not drunk at the time of the assault. *See generally State v. Kohl*, 2000 UT 35, ¶ 22, 999 P.2d 7 (describing the two-part test for establishing prosecutorial misconduct). Because this argument is not preserved, Kataria requests that we review it

under an ineffective assistance of counsel or plain error framework. "To prevail under plain error review, a defendant must demonstrate that (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome." *State v. Ross*, 2007 UT 89, ¶ 17, 174 P.3d 628 (citations and internal quotation marks omitted).

¶14   Kataria specifically alleges that Victim lied when she testified at trial that Kataria was not slurring his speech or staggering drunk the night of the assault in light of her preliminary hearing testimony that Kataria was "very drunk." This argument presupposes that these testimonies are mutually exclusive and that Kataria's level of intoxication was not disputed at trial. However, Kataria's own disbelief that a "very drunk" person could possibly maintain his ability to speak and walk normally does not support his accusation that the prosecution perpetuated falsehoods. Both of the cited statements made by Victim could be true.

¶15   Accordingly, because we are not convinced that Victim's testimony was necessarily false, we reject Kataria's assertions that the prosecution "intentionally solicited false testimony," failed to correct false testimony, and relied on false testimony in its closing argument. As a result, Kataria's prosecutorial misconduct argument fails to establish ineffective assistance of counsel and fails to demonstrate plain error.

C.    Photographic Evidence

¶16   Kataria next argues that his trial counsel performed deficiently for failing to take steps to exclude "inherently inflammatory evidence" by failing to file a motion in limine prior to trial and for failing to object to the evidence during the trial. The evidence Kataria challenges consists of a series of photographs taken the night of the assault showing Victim's blood-spattered bedroom and close-ups of her various injuries, as well as additional photos of Victim's injuries taken a few days after the assault. Kataria contends that because the notion that Victim "was injured, the nature of her injuries, and the person who caused her injuries

were not disputed facts at trial," the photographs were not relevant and otherwise had no probative value as to "whether Kataria was capable of forming specific intent."

¶17   We disagree. First, we note that "a stipulation of fact by defense counsel does not make evidence less relevant, nor is it a basis for depriving the prosecution the opportunity of profiting from the legitimate moral force of its evidence in persuading a jury." *State v. Gulbransen*, 2005 UT 7, ¶ 37, 106 P.3d 734 (citation and internal quotation marks omitted). Likewise, "the fact that the same evidence could have been provided by purely testimonial means does not necessarily make a photograph inadmissible." *Id.* ¶ 38 (citation and internal quotation marks omitted). Here, the photographs were clearly relevant in establishing an essential element of the assault and kidnapping charges—the extent to which Victim was injured. For a conviction of aggravated domestic assault, the jury needed to find that Victim sustained "serious bodily injuries," which the jury instructions defined as "bodily injury that creates or causes serious permanent disfigurement, protracted loss or impairment of the function of any bodily member or organ, or creates a substantial risk of death." The jury was also instructed on domestic assault, which required a finding of "substantial bodily injury." The instructions defined "substantial bodily injury" as "bodily injury not amounting to serious bodily injury, that creates or causes protracted physical pain, temporary disfigurement, or temporary loss or impairment of the function of any bodily member or organ." A variant of aggravated kidnapping on which the jury was instructed permitted conviction of that offense based on a finding that Kataria intentionally or knowingly detained or restrained Victim and, "in the course of doing so, . . . acted with the intent . . . [t]o inflict bodily injury on . . . the victim." The jury was instructed that bodily injury "means physical pain, illness, or any impairment of physical condition." In contrast, the jury instruction on the lesser-included offense to aggravated kidnapping—unlawful detention—did not contain an injury element at all.

¶18   Accordingly, Kataria's trial counsel did not perform deficiently by failing to object to the admission of the enumerated

photographs either during trial or through a pretrial motion in limine. We are convinced that any such motion or objection would have been futile considering the relevance of the disputed photographs. *See Codianna v. Morris*, 660 P.2d 1101, 1109 (Utah 1983) ("[T]he failure of counsel to make motions or objections which would be futile if raised does not constitute ineffective assistance." (citation and internal quotation marks omitted)).

## II. Additional Photographic Evidence

¶19     Kataria's trial counsel timely objected to two photographs admitted into evidence on the grounds that the images were "inherently inflammatory" and "cumulative." *See generally* Utah R. Evid. 403. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.* In reviewing the trial court's decision to admit these photos, we look for an abuse of discretion. *See State v. Jackson*, 2010 UT App 328, ¶ 9, 243 P.3d 902. "Evidentiary errors on the part of the trial court will only be reversed if prejudicial." *Id.*

¶20     The photographs at issue were taken at the crime scene and show the injuries to Victim's face shortly after the assault. One is taken from an angle that shows more of the left side of Victim's face and the other from an angle showing more of the right side of her face. A third photograph, deemed properly admitted, shows the same face and head injuries but from yet another perspective. In other words, three photos were admitted of Victim's head and face injuries, and although each photo was taken from a different angle, Kataria challenges the three images as two too many.

¶21     Kataria does not dispute the relevance of these photographs; rather, he reargues his earlier assertion that because Kataria's intent was the only disputed fact at trial, these photographs had no probative value and therefore the probative value of the

photographs was clearly outweighed by the risk of unfair prejudice resulting from the gruesomeness of the images.[2]

¶22    "We have frequently stated and applied the rule that color photographs of the body of the victim—even photographs that are gruesome—are not inadmissible if they are probative of essential facts, even though they may be cumulative of other evidence." *State v. Garcia*, 663 P.2d 60, 63 (Utah 1983). We reject Kataria's argument that because the fact of Victim's injuries was not disputed at trial, the photographs of her injuries have no probative value for the same reason we rejected his similar argument above. Accordingly, Kataria has failed to refute the probative value of these two photos, and he has otherwise failed to sufficiently argue how these images are impermissibly cumulative. The trial court's admission of these two photographs over Kataria's objections at trial was not an abuse of discretion.

### III. Cross Appeal[3]

¶23    On cross appeal, the State argues that the trial court erred in merging the aggravated kidnapping charge into the aggravated domestic assault charge. Specifically, the State contends that "because there is no detention inherent in assault," Victim's undisputed testimony that Kataria "twice forced [Victim] to shower between assaults and prevented her from leaving the room" to get a towel sufficiently support a separate charge of aggravated kidnapping. "Merger issues present questions of law, which we

---

2. Kataria also insinuates that the trial court abused its discretion by failing to properly analyze the photographs under rule 403 of the Utah Rules of Evidence. This argument is not sufficiently briefed to warrant our review. *See* Utah R. App. P. 24(a)(9) (describing the requirements of an adequately briefed argument).

3. As previously noted, this section of the lead opinion reflects the dissenting views of Judge Davis. The majority opinion on the issues presented in this section is contained in Judge Voros's separate opinion. *See infra* ¶¶ 30–35.

review for correctness." *State v. Diaz*, 2002 UT App 288, ¶ 10, 55 P.3d 1131.

¶24    "Merger is a judicially-crafted doctrine available to protect criminal defendants from being twice punished for committing a single act that may violate more than one criminal statute" and "is most commonly applied to situations involving a defendant who has been charged with committing both a violent crime, in which a detention is inherent, and the crime of kidnaping based solely on the detention necessary to the commission of the companion crime." *Id.* ¶ 17 (citing *State v. Finlayson,* 2000 UT 10, ¶ 19, 994 P.2d 1243). "When the detention involved is no longer nor larger in scope than necessary to commit the companion crime, courts have determined the detention to be inherent within the companion crime and do not permit double punishment." *Id.*

¶25    Utah courts rely on a three-part test to determine whether the facts establishing a kidnapping charge are not merely incidental to, but separate and independent from, the other offenses charged. *See Finlayson*, 2000 UT 10, ¶¶ 19–20, 23–24 (determining that the act of handcuffing the victim to the bed while raping her could not sustain an aggravated kidnapping charge separate from the rape charge). The test, also called the *Finlayson* factors, is as follows:

> [I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnaping the resulting movement or confinement:
>
> (a) Must not be slight, inconsequential and merely incidental to the other crime;
>
> (b) Must not be of the kind inherent in the nature of the other crime; and
>
> (c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.

*Id.* ¶ 23 (alteration in original) (citing *State v. Buggs*, 547 P.2d 720, 731 (Kan. 1976)).[4]

¶26    The elements of aggravated kidnapping that the State needed to prove in this case were that Kataria "[i]ntentionally or knowingly," "[w]ithout authority of law, and against the will of the victim," "[d]etained or restrained the victim," *see* Utah Code Ann. § 76-5-301(1) (LexisNexis 2012) (kidnapping), with the intent to "hinder or delay the discovery of or reporting of a felony," or "inflict bodily injury on or to terrorize the victim,"[5] *see id.* § 76-5-302(1)(b)(iii)–(iv) (Supp. 2013) (aggravated kidnapping). Here, the trial court rejected the State's arguments that Kataria's "pinning [Victim] down to get her phone," "knocking her down to prevent her from leaving the room to get a towel," and twice interrupting his beatings to force Victim to shower the blood off of her body each supported a separate aggravated kidnapping charge.

¶27    I agree with the trial court. None of the specific facts cited by the State in support of its aggravated kidnapping argument show that any alleged detention (1) was not "merely incidental to" the prolonged assault in this case, (2) was not inherent to the assault as it occurred here, and (3) had any "significance independent of the" assault that made the commission of the assault easier or facilitated Kataria's flight. *See Finlayson*, 2000 UT 10, ¶ 23 (citation and internal quotation marks omitted). In fact, Kataria offered to call the police for Victim, stating, "I'd gladly go to jail for you." The State's strongest argument for maintaining a separate aggravated kidnapping charge revolves around the evidence that Kataria twice

---

4. A proper merger analysis also requires a court to consider the provisions of Utah Code section 76-1-402(3); however, our supreme court has previously considered this section of the code in a case involving similar charges and held that "aggravated kidnaping is not a lesser included offense of aggravated assault under section 76-1-402." *State v. Lee*, 2006 UT 5, ¶¶ 28–30, 33, 128 P.3d 1179.

5. The jury based its aggravated kidnapping conviction on its determination that Kataria inflicted serious bodily injuries.

forced Victim to shower. Victim testified that Kataria pushed her toward the bathroom and told her to shower the blood off of herself. She stated that she entered the shower on her own and that Kataria did not barricade the door or otherwise detain her in the shower; indeed, she testified that from the shower, she could see Kataria through the lace shower curtain in the bedroom on his hands and knees cleaning blood off the floor. Victim testified that because her nose was still bleeding when she exited the shower, Kataria pushed her back toward the shower and told her to keep washing. When she exited the shower for a second time and took a few steps toward the hallway to get a towel, Kataria lunged at her, knocked her to the ground, and resumed beating her.

¶28    Though the minutes Victim spent in the shower were minutes in which she was not being actively assaulted and could conceivably support the requirement that the detention "have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection," *id.*, I cannot agree with the State's proposal that the time Victim spent bathing supports a finding that the assault had ended, a kidnapping occurred, and then another assault started when Victim tried to get a towel. Such a determination pushes the line drawn by our supreme court in *Finlayson* toward a slippery slope down which I do not desire to venture.[6] Accordingly, I would affirm the trial court's decision to merge the charges.

---

6. This is not to say that under a different set of facts, as was the case in *State v. Lee*, 2006 UT 5, 128 P.3d 1179, a detention involved in an assault could not support a separate charge of kidnapping. Contrary to the majority's opinion on this issue, I believe *Lee* is distinguishable on its facts where the kidnapping conviction was based on the defendant's having forcibly dragged one of the victims to a more secluded area and away from her friend where he then engaged in the acts supporting the aggravated assault conviction. *Id.* ¶ 34 (noting that "most assaults do not involve the relocation of the victim from one site to another").

CONCLUSION

¶29     Kataria's trial counsel did not provide ineffective assistance, the prosecutor did not commit misconduct, and the trial court did not err in admitting specific photographs into evidence. As discussed below, *see infra* ¶¶ 30–35, the trial court's merger ruling is reversed.[7]

———————

VOROS, Judge, (concurring in part and writing for the majority in part):

¶30     I concur in the lead opinion except as to Part III. I agree with the State that the trial court erred by merging Kataria's aggravated-kidnapping conviction into his aggravated-assault conviction. And because Judge Pearce concurs with my resolution of this issue, the following opinion represents the judgment of the court on this point.

¶31     Merger of the sort at issue here traces back to the Utah Supreme Court's opinion in *State v. Couch*, 635 P.2d 89 (Utah 1981). There, the court upheld convictions for both kidnapping and rape because "the kidnaping was not merely incidental or subsidiary to" the "host crime" of rape. *Id.* at 92–93. The court held that commission of the crime of kidnapping "requires a period of detention longer than the minimum inherent in the commission of a rape or a robbery." *Id.* at 93.

¶32     Our supreme court applied this merger doctrine in *State v. Finlayson*, another case involving rape. 2000 UT 10, 994 P.2d 1243. The court there used a three-part test to determine whether kidnapping merges with another crime:

———————

7. Because the Court has determined that no errors occurred, Kataria's cumulative error argument necessarily fails. *See generally State v. Dunn*, 850 P.2d 1201, 1229 (Utah 1993) (outlining the cumulative error doctrine).

> [I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnaping the resulting movement or confinement:
>
> > (a) Must not be slight, inconsequential and merely incidental to the other crime;
> > (b) Must not be of the kind inherent in the nature of the other crime; and
> > (c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.

*Id*. ¶ 23 (quoting *State v. Buggs*, 547 P.2d 720, 731 (Kan. 1976)). The court explained: "To sustain convictions for both kidnaping and sexual assault, the prosecutor must show that the kidnaping detention was longer than the necessary detention involved in the commission of the sexual assault." *Id.* ¶ 19. In *Finlayson*, the court saw no "detention prior to or during the sexual assault that exceeded the detention inherent in the sex crimes." *Id.* ¶ 22. Rather, it concluded that the defendant's "carrying the victim into [a] bedroom, handcuffing her, and physically preventing her escape while the sex crimes were in progress" lacked independent significance and was "merely incidental" to the sex crimes. *Id.* ¶ 23. However, Finlayson also detained the victim for ten minutes before driving her home, forced her to wear a jacket over her head, and drove her home by a circuitous route taking at least thirty minutes longer than necessary. *Id.* ¶ 32. The court explained that "these actions were of an independent significance separate from the commission of the sex crimes" and thus "sufficient to support a conviction for simple kidnaping." *Id.* ¶ 33.[8]

---

8. However, independent of the merger analysis, the court concluded that the evidence was insufficient to prove that Finlayson detained the victim with the intent "to facilitate the commission, attempted commission, or flight after commission or

(continued...)

¶33    In *State v. Lee*, 2006 UT 5, 128 P.3d 1179, our supreme court again addressed the merger doctrine developed in *Couch* and *Finlayson*. *Lee* assessed the merger of the same two offenses at issue here: aggravated kidnapping and aggravated assault. *Id.* ¶ 1. Lee approached two women and invited them to "party" with him. *Id.* ¶ 3. When they declined, he grabbed one of the women by the arm and groped her. *Id.* ¶ 4. He also pulled one of the women across the highway to an alley, where, after the other tried to intervene, he attacked both women. *Id.* ¶¶ 5–6. Our supreme court affirmed Lee's convictions for both aggravated assault and aggravated kidnapping against Lee's merger challenge:

> [D]ragging [one victim] across a highway by her hair was not "slight, inconsequential and merely incidental to" the assault Lee had already commenced against her. Nor was Lee's movement of [the victim] to a location across Highway 40 "inherent in the nature of" his assault on her. Indeed, most assaults do not involve the relocation of the victim from one site to another. Finally, [the victim's] aggravated kidnaping carried a "significance independent of" the aggravated assault, as it allowed Lee to carry [one victim] away from [the other], thereby rendering further assault, or even rape, "substantially easier of commission." In addition, carrying [the victim] to the alley between two buildings at a very early hour of the morning made the assault far more difficult to detect than it would have been on Highway 40 and thereby "substantially lessen[ed] [Lee's] risk of detection."

---

8. (...continued)
attempted commission of a felony." *State v. Finlayson*, 2000 UT 10, ¶¶ 33, 35, 994 P.2d 1243 (emphasis omitted). Accordingly, it agreed with Finlayson that the evidence did not support his conviction for aggravated kidnapping. *Id.* ¶ 35. Here, Kataria does not argue that any element of his conviction for aggravated kidnapping lacks evidentiary support.

*Id.* ¶ 34 (final two alterations in original) (internal citations omitted) (quoting *Finlayson*, 2000 UT 10, ¶ 23).

¶34    Here, Kataria pushed Victim toward the bathroom and ordered her to shower the blood off of her body; when she emerged, he ordered her back into the shower.[9] These forced showers constituted "a period of detention longer than the minimum inherent in the commission of" the aggravated assault. *See Couch*, 635 P.2d at 93. Unlike the detention inherent in a rape—but like the detention in *Lee*—these showers were not "'merely incidental to the other crime,'" "'inherent in the nature of the other crime,'" or lacking in "'significance independent of the other crime.'" *See Finlayson*, 2000 UT 10, ¶ 23 (quoting *Buggs*, 547 P.2d at 731). A compulsory shower is not inherent in an aggravated assault.[10]

---

9. Contrary to the dissenting opinion, given the ferocity of the attacks Victim had just endured, we see no relevance in the fact that she "entered the shower on her own and that Kataria did not barricade the door or otherwise detain her in the shower." *See supra* ¶ 22.

10. The dissent places some reliance on the third *Buggs* factor, that the detention "'[m]ust have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.'" *State v. Finlayson*, 2000 UT 10, ¶ 23, 994 P.2d 1243 (quoting *State v. Buggs*, 547 P.2d 720, 731 (Kan. 1976)). This factor seems to cloud rather than clarify the analysis. The first clause of that factor—that a kidnapping must have some significance independent of the other crime—complements the first two *Buggs* factors, that the detention not be "merely incidental to the other crime" and not be "inherent in the nature of the other crime." *Id.* (citation and internal quotation marks omitted). But the final clause of the third factor appears to describe a crime that *lacks* independent significance: "in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection." *Id.* (citation and internal

(continued...)

¶35    Accordingly, the trial court's merger order is reversed and we remand for further proceedings.

————————

10. (...continued)

quotation marks omitted). A crime whose significance lies in making the host crime easier to commit or get away with would seem to be dependent on, not independent of, the host crime. Because we cannot square this clause with *Couch*, *Finlayson*, the first two *Buggs* factors, or even the first half of the third *Buggs* factor, we do not accord it controlling weight.